J-S78005-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL ANDREW NOLL | |
| Appellant | No. 411 MDA 2014 |

Appeal from the Judgment of Sentence August 6, 2013
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0003135-2012

BEFORE: GANTMAN, P.J., JENKINS, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.: **FILED MARCH 27, 2015**

Appellant, Michael Andrew Noll, appeals from the judgment of sentence entered in the Cumberland County Court of Common Pleas, following his convictions of two counts of simple assault, recklessly endangering another person ("REAP"), and harassment.[1]  We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.[2]

---

[1] 18 Pa.C.S.A. §§ 2701(a)(1), 2705, and 2709(a)(1), respectively.

[2] "A direct appeal in a criminal proceeding lies from the judgment of sentence." ***Commonwealth v. Patterson***, 940 A.2d 493, 497 (Pa.Super. 2007), *appeal denied*, 599 Pa. 691, 960 A.2d 838 (2008).  If a defendant in a criminal case files a timely post-sentence motion, the notice of appeal shall

*(Footnote Continued Next Page)*

Appellant raises the following issues for our review:

> WHETHER THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SENTENCED [APPELLANT] TO SERVE CONSECUTIVE MAXIMUM SENTENCES IN STATE PRISON WHEN THE COURT FAILED TO STATE ANY REASONS ON THE RECORD IN SUPPORT THEREOF, RELIED UPON IMPROPER CONSIDERATIONS ON MATTERS NOT OF RECORD, FAILED TO CONSIDER [APPELLANT'S] PERSONAL AND FINANCIAL HISTORY, FAILED TO CONSIDER [APPELLANT'S] REHABILITATIVE NEEDS, FAILED TO CONSIDER THE PARTICULAR CIRCUMSTANCES OF THE OFFENSES, AND MISAPPLIED THE LAW WHEN IT DETERMINED THAT THE SENTENCES FOR SIMPLE ASSAULT AND [REAP] DID NOT MERGE?

*(Footnote Continued)* ─────────────

be filed within 30 days of the entry of the order deciding the motion. Pa.R.Crim.P. 720(A)(2)(a). The denial of a timely post-sentence motion becomes the triggering event for filing a notice of appeal. Pa.R.Crim.P. 720(A)(2). Generally, where a defendant timely files a post-sentence motion, the court shall decide the motion within 120 days of the filing; otherwise, the motion shall be deemed denied by operation of law. *See* Pa.R.Crim.P. 720(B)(3)(a). A clerk of courts' failure to enter an order stating a post-sentence motion has been denied by operation of law and to furnish the parties with a copy of the order, however, constitutes a breakdown in the court system. ***Commonwealth v. Braykovich***, 664 A.2d 133, 138 (Pa.Super. 1995). Such a breakdown warrants extension of the appeal period or the grant of an appeal *nunc pro tunc*. ***Id.*** Instantly, the record makes clear Appellant timely filed his post-sentence motion (and supplemental motion). The court held a hearing on Appellant's motion within 120 days of its filing but did not rule on the motion within 120 days (no extension was requested). Thus, the post-sentence motion was deemed denied by operation of law. Nevertheless, the clerk of courts failed to enter a Rule 720(B)(3)(c) order on behalf of the court, which constitutes a breakdown in the court system. ***See id.*** The trial court eventually denied the post-sentence motion on February 7, 2014. Therefore, we will treat the February 7, 2014 order as a Rule 720(B)(3)(c) order solely for purposes of the date on which this appeal period began to run. Appellant timely filed his notice of appeal on March 3, 2014, within the 30-day appeal period, so we have no impediment to appellate jurisdiction. ***See Patterson, supra*** (stating appellate court can raise issue of jurisdiction *sua sponte*).

WAS THE EVIDENCE PRESENTED AT TRIAL SUFFICIENT TO SUSTAIN A CONVICTION ON ANY OF THE CHARGES WHEN THE EVIDENCE PROVED THAT APPELLANT DID NOT CONSCIOUSLY DISREGARD A KNOWN RISK OF DEATH OR GREAT BODILY INJURY TO [VICTIM], DID NOT KNOWINGLY INJURE [VICTIM], AND DID NOT INTEND TO HARASS, ALARM, OR ANNOY [VICTIM] BECAUSE [APPELLANT] ACTED IN JUSTIFIABLE SELF-DEFENSE TO PREVENT THE DANGER OF DEATH OR SERIOUS BODILY INJURY TO HIMSELF?

WHETHER [APPELLANT'S] CONVICTIONS WERE AGAINST THE WEIGHT OF EVIDENCE SO AS TO SHOCK ONE'S SENSE OF JUSTICE WHEN THE EVIDENCE PROVED [APPELLANT] ONLY STRUCK AND RESTRAINED [VICTIM] IN SELF-DEFENSE TO PREVENT THE DANGER OF DEATH OR SERIOUS BODILY INJURY TO HIMSELF?

(Appellant's Brief at 7).

In his first issue, Appellant argues his sentence was in error. Appellant claims the presentence investigative ("PSI") report merely reiterated his prior record score and contained insufficient relevant information on his physical and mental health history, history of alcohol abuse, and occupation and employment history. Appellant alleges the court failed to indicate on the record that it had considered the PSI report prior to sentencing. Additionally, Appellant contends his sentence is manifestly excessive because the court sentenced him to an aggregate term of two (2) to four (4) years' state imprisonment, plus $200.00 in fines. Appellant avers the court focused exclusively on the severity of Appellant's offenses and his prior record score. Appellant asserts the court failed to consider mitigating factors, including Appellant's personal and financial background, personal

characteristics, relative culpability, prospects for rehabilitation, and mental health history. Appellant insists the court disregarded Appellant's voluntary measures to address his alcohol addiction, that the victim was the initial aggressor, and that Appellant was unable to pay $200.00 in fines. In addition, Appellant complains the court improperly used the victim's impact statement to supplement the PSI report while the victim's statement remained undisclosed to Appellant until sentencing. Appellant concludes this Court should vacate his judgment of sentence and remand for resentencing. As presented, these claims challenge the discretionary aspects of sentencing. *See Commonwealth v. Dunphy*, 20 A.3d 1215 (Pa.Super. 2011) (stating claim that sentencing court failed to offer adequate reasons to support sentence challenges discretionary aspects of sentencing); *Commonwealth v. Anderson*, 830 A.2d 1013 (Pa.Super. 2003) (stating claim that court considered improper factors at sentencing refers to discretionary aspects of sentencing); *Commonwealth v. Lutes*, 793 A.2d 949 (Pa.Super. 2002) (stating claim that sentence is manifestly excessive challenges discretionary aspects of sentencing); *Commonwealth v. Cruz-Centeno*, 668 A.2d 536 (Pa.Super. 1995) (explaining claim that court did not consider mitigating factors challenges discretionary aspects of sentencing).

Appellant also argues his sentences for simple assault and REAP should have merged because the Commonwealth used the same facts to

support Appellant's convictions for both offenses. Appellant maintains once the Commonwealth established Appellant engaged in conduct that placed the victim, Ms. Webster, in danger of serious bodily injury for purposes of REAP, the Commonwealth also proved Appellant caused bodily injury for simple assault. Appellant concludes this Court should vacate the judgment of sentence and remand for resentencing. We disagree.

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. **Commonwealth v. Sierra**, 752 A.2d 910 (Pa.Super. 2000). Prior to reaching the merits of a discretionary sentencing issue:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **See** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **See** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted).

When appealing the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. **Commonwealth v. Mouzon**, 571 Pa. 419, 812 A.2d 617 (2002);

Pa.R.A.P. 2119(f). The concise statement must indicate "where the sentence falls in relation to the sentencing guidelines and what particular provision of the code it violates." *Commonwealth v. Kiesel*, 854 A.2d 530, 532 (Pa.Super. 2004) (quoting *Commonwealth v. Goggins*, 748 A.2d 721, 727 (Pa.Super. 2000), *appeal denied,* 563 Pa. 672, 759 A.2d 920 (2000)).

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Anderson, supra*. A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Sierra, supra* at 912-13. A claim that a sentence is manifestly excessive might raise a substantial question if the appellant's Rule 2119(f) statement sufficiently articulates the manner in which the sentence imposed violates a specific provision of the Sentencing Code or the norms underlying the sentencing process. *Mouzon, supra* at 435, 812 A.2d at 627. Generally, "[a]n allegation that a sentencing court failed to consider or did not adequately consider certain factors does not raise a substantial question that the sentence was inappropriate." *Cruz-Centeno, supra* at 545 (internal quotation marks omitted). Nevertheless, an appellant raises a substantial question where he alleges an excessive sentence due to the court's reliance on impermissible factors.

*Commonwealth v. McNabb*, 819 A.2d 54 (Pa.Super. 2003). Likewise, "[a]n allegation that a judge 'failed to offer specific reasons for [a] sentence does raise a substantial question.'" *Dunphy, supra* at 1222 (quoting *Commonwealth v. Reynolds*, 835 A.2d 720, 734 (Pa.Super. 2003)).

"A claim that crimes should have merged for sentencing purposes raises a challenge to the legality of the sentence. Therefore, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Quintua*, 56 A.3d 399, 400 (Pa.Super. 2012), *appeal denied*, 620 Pa. 730, 70 A.3d 810 (2013). "A challenge to the legality of the sentence may be raised as a matter of right, is non-waivable, and may be entertained so long as the reviewing court has jurisdiction." *Commonwealth v. Robinson*, 931 A.2d 15, 19-20 (Pa.Super. 2007) (*en banc*). Whether offenses merge at sentencing implicates Section 9765 of the Sentencing Code, which provides:

> ### § 9765. Merger of sentences
>
> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act **and** all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765 (emphasis added). "[T]he current state of merger law in Pennsylvania makes clear there is no merger if each offense requires proof of an element the other does not." *Quintua, supra* at 401. Under Section 9765, this Court held there are distinct elements in both simple assault and REAP, which preclude merger for sentencing purposes.

*Commonwealth v. Calhoun*, 52 A.3d 281, 289 (Pa.Super. 2012), *appeal denied*, 620 Pa. 694, 67 A.3d 793 (2013).

Instantly, Appellant properly preserved his discretionary aspects of sentencing claim in his supplemental post-sentence motion and included a Rule 2119(f) statement in his appellate brief. **See Evans, supra**. Thus, after a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Christylee L. Peck, we conclude Appellant's first issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented. (**See** Trial Court Opinion, filed May 29, 2014, at 15-20) (finding: sentences for simple assault and REAP were in standard range; court stated on record that Appellant's drinking was primary cause of his criminal behavior, PSI indicated probation department was unable to effectuate changes in Appellant's relationship with alcohol, state incarceration would best serve Appellant's rehabilitative needs, and Appellant's failure to address alcohol addiction, use treatment resources during prior supervision, and repeated use of his addiction as excuse for criminal behavior were court's primary considerations in imposing Appellant's sentence; Appellant's sentences were not manifestly unreasonable because, at sentencing, Appellant showed no remorse for harm he caused Ms. Webster, Appellant avoided taking responsibility for his actions, Appellant's actions of choking Ms. Webster, until she passed out and defecated, displayed Appellant's violent nature, and

state incarceration was necessary to protect public and rehabilitate Appellant; Appellant's challenge to PSI report concerning alleged inaccurate account of Appellant's criminal history exerted no influence over sentence; sentencing guidelines' reflection of Appellant's prior record score does not render consideration of Appellant's criminal history improper; PSI report contained Appellant's work history from which court determined proper amount of fines to impose; Ms. Webster's victim impact statement did not ask or encourage court to incarcerate Appellant; Superior Court has effectively resolved that merger of simple assault and REAP at sentencing is precluded). Moreover, Appellant's argument that the court failed to consider certain mitigating factors at sentencing does not raise a substantial question. **See Cruz-Centeno, supra** at 545. The court had the benefit of a PSI report at sentencing. Therefore, we can presume the court considered the relevant facts when sentencing Appellant. **See Commonwealth v. Tirado**, 870 A.2d 362 (Pa.Super. 2005) (stating where sentencing court had benefit of PSI, law presumes court was aware of and weighed relevant information regarding defendant's character and mitigating factors).

With regard to Appellant's second and third issues, challenging the sufficiency and weight of the evidence, respectively, after a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Christylee L. Peck, we conclude Appellant's second and third issues merit no relief. The trial court opinion

comprehensively discusses and properly disposes of the questions presented. (*See* Trial Court Opinion at 20-24) (finding: **(2)** there was sufficient evidence to convict Appellant of simple assault because Appellant testified he intentionally punched Ms. Webster in face, and Ms. Webster testified that, as result of being punched, she had pain when she spoke, she could eat only soft foods for some time, and she had large lump on jaw for two months; there was sufficient evidence to convict Appellant of REAP because Appellant placed Ms. Webster in danger of death and serious bodily injury when Appellant choked Ms. Webster until she passed out and lost control of her bowels; there was sufficient evidence to find Appellant guilty of harassment because Appellant admitted to Detective Gingrich that Appellant shoved Ms. Webster away prior to punching her in face, and because court, as trier of fact, inferred Appellant's intent to harass from totality of circumstances, which included Appellant's punching and choking Ms. Webster; record belies Appellant's self-defense claim because Appellant told Corporal Speck that Ms. Webster was trying to stop Appellant's snoring and, therefore, Appellant should have realized Ms. Webster's actions would cease once Appellant stopped snoring; after Appellant had awakened and stopped snoring, there was no unlawful force from which he needed to protect himself by punching and choking Ms. Webster; jury was warranted in concluding Appellant's belief in necessity of force to protect himself was unreasonable, where Ms. Webster testified she only nudged Appellant and

did not place her hand over Appellant's mouth and nose; Ms. Webster's testimony provided jury with sufficient evidence to find Appellant's use of force was unjustified; **(3)** Appellant told three separate versions of incident, one to Corporal Speck, one to Detective Gingrich, and one at trial; jury was informed that Appellant had previously been convicted of false identification to law enforcement, which is crime of *crimen falsi*; Appellant's stepfather testified there was no money missing from his wallet, despite Appellant's claim that sixty dollars disappeared while Ms. Webster was staying with Appellant; jury's verdicts were not against weight of evidence, given inconsistencies in Appellant's version of events, his prior lie to law enforcement, and his stepfather's contradiction of Appellant's claim; jury's verdicts did not shock court's sense of justice because jury found Ms. Webster's testimony credible).  The record supports the trial court's decision; therefore, we see no reason to disturb it.  Accordingly, we affirm the judgment of sentence on the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/27/2015

- 11 -

COMMONWEALTH        :   IN THE COURT OF COMMON PLEAS OF
                                  :   CUMBERLAND COUNTY, PENNSYLVANIA
                                  :
                                  :   CHARGES: (2) SIMPLE ASSAULT (M-2)
v.                             :                (4) RECKLESSLY ENDANGERING
                                  :                    ANOTHER PERSON
                                  :                (5) HARASSMENT (Sum.)
                                  :   AFFIANT: PTL. BRADLEY D. SHEETZ
                                  :
MICHAEL ANDREW NOLL    :   CP-21-CR-3135-2012

### IN RE: OPINION PURSUANT TO PA. R.A.P. 1925

Peck, J., May 29, 2014 –

On July 9, 2013, after a jury trial, Defendant was found guilty at Count 2-A, Simple Assault, attempt to cause bodily injury, a misdemeanor of the second degree, at Count 2-B, Simple Assault, bodily injury caused, a misdemeanor of the second degree, and at Count 4, Recklessly Endangering Another Person, also a misdemeanor of the second degree. Defendant was found not guilty of Aggravated Assault.[1] This Court found Defendant guilty of Harassment, a summary offense.[2] On August, 6, 2013, Defendant was sentenced at Count 2-B to undergo a period of incarceration in a State Correctional Facility of not less than one year nor more than two years, to pay the costs of prosecution, and a fine of $100.00, at Count 4 to undergo a period of incarceration in a State Correctional Facility of not less than one year nor more than two years, to run consecutively to the sentence imposed at Count 2-B, to pay the costs of prosecution, and a fine of $100.00, and at Count 5 to pay the costs of prosecution.[3] On August 12, 2013, Defendant filed a post-sentence motion requesting that counsel be appointed to file

---

[1] Order of Court, In Re: Verdict/Appear for Sentence/Bail (July 9, 2013). This Order was amended on July 19, 2013, to reflect the proper date of July 10, 2013. See Amending Order of Court, In Re: Defendant Found Guilty & Verdict/Appear for Sentence/Bail (July 19, 2013). Count 3, Intimidation of Witnesses or Victims, was withdrawn by the Commonwealth on July 8, 2013. See Order of Court, In Re: Commonwealth Withdraws Count 3 (July 8, 2013).

[2] Order of Court, In Re: Defendant Found Guilty (July 9, 2013).

[3] Order of Court, In Re: Sentencing & Bail Pending Appeal (August 6, 2013). Count 2-A merged with Count 2-B for the purposes of sentencing.



additional post-sentence motions.[4] On August 13, 2013, we granted Defendant's motion and appointed the Office of the Public Defender to represent Defendant.[5] On August 23, 2013, Defendant filed counseled post-sentence motions.[6] A hearing on Defendant's motions was scheduled for November 5, 2013.[7] However, at the request of the Commonwealth and with the concurrence of Defendant, that hearing was rescheduled for December 17, 2013.[8] At the conclusion of the December 17th hearing, Defendant requested time to file supplemental case law with the Court which we granted.[9] On February 7, 2014, we denied Defendant's Supplemental Post-Sentence Motions.[10] On March 3, 2014, Defendant filed a Notice of Appeal.[11] In accordance with Pennsylvania Rule of Appellate Procedure 1925(b), Defendant has filed the following concise statement of matters complained of on appeal:

1. This Honorable Court neglected to state its reasons on the record in support of its sentences which were in the *aggravated range* (12 months), and, in fact, not only were the absolute lawful maximums imposed for the M2 offenses of simple assault and recklessly endangering another person but, in addition, the sentences were further made consecutive with each other likewise without compelling, or even any, reasons given warranting same.

2. The sentences imposed, both individually and consecutively, were manifestly excessive (a) considering the nature of the conduct alleged, (b) considering the Defendant's own testimony and uncontradicted claim of self-defense and the aggressiveness of the victim toward a sleeping defendant, (c) by failing to consider Defendant's long-time alcohol addiction and mental health treatment and bipolar diagnosis, (d) based, it is believed and therefore averred,

---

[4] Defendant's Post-Sentence Motion to Waive Right to Self-Representation and Appoint Counsel to Perfect Timely and Adequate Post-Sentence Motions and/or Appeal, filed August 12, 2013.

[5] Order of Court, In Re: Defendant's Post-Sentence Motion to Waive Right to Self-Representation and Appoint Counsel to Perfect Timely and Adequate Post-Sentence Motions and/or Appeal (August 13, 2013).

[6] Defendant's Supplemental Post-Sentence Motions, filed August 23, 2013.

[7] Order of Court (September 19, 2013).

[8] Commonwealth's Motion to Continue Hearing on Post-Sentence Motions, filed November 1, 2012. Order of Court, In Re: Motion to Continue Hearing on Post-Sentence Motions (November 1, 2013).

[9] Order of Court, In Re: Defendant's Supplemental Post-Sentence Motions (December 17, 2013).

[10] Order of Court, In Re: Defendant's Supplemental Post-Sentence Motions (February 7, 2014).

[11] Notice of Appeal, filed March 3, 2014.

upon reliance on an error-plagued, incomplete and biased presentence report recommending state prison primarily based on prior criminal history which is already reflected in the sentencing guidelines, and, further (e) clearly affected by the improper, prejudicial 'victim impact statement' which was not provided to the Defendant in advance of the sentencing affording him an opportunity to respond to same, and, further, the victim statement was instead a blatant "recommendation for jail" (retribution) by the victim (who did not appear for sentencing) through the District Attorney rather than a proffer of any actual impact sustained by the victim to her life or circumstances caused at the hands of the Defendant, and finally, (f) the Court imposed fines without making inquiry into the Defendant's ability to pay same nor was there sufficient detail within the presentence report itself from which to order same.

3. In addition, the said consecutive, maximum lawful sentences disproportionate to the crimes charged and ignoring legitimate mitigating factors constitute cruel and unusual punishment and violate the fundamental norms of sentencing under the Sentencing Code for the lack of rationale supporting same which creates a substantial question for appellate review

4. The sentences for simple assault and recklessly endangering another person should have merged for purposes of sentencing as (1) there was no mechanism for the jury to indicate with specificity or delineate which facts/injuries they found made out the assault and which facts/injury they found supported recklessly endangering another person; and (2) in the likely event the same conduct was found by the jury to have supported each count, then the sentences should have merged for the two offenses

5. There was insufficient evidence as a matter of law to sustain the jury verdict for simple assault and that the defendant caused or attempted to cause bodily injury when it is undisputed that Noll was awakened out of a deep sleep, testified he feared for his safety and acted in self-defense or out of survival rather than any conscious desire or intent to cause injury

6. There was insufficient evidence as a matter of law to support the jury verdict for the charge of recklessly endangering another person as there was no medical, physical or evidence otherwise to sustain the required element of "danger."

7. There was insufficient evidence as a matter of law to support the verdict for harassment with respect to the element of "intent" to harass, annoy or alarm when it is undisputed that the Defendant was awakened out of a deep sleep, testified he feared for his safety and

3

acted in self-defense or out of survival rather than any conscious desire to cause annoyance or alarm to Ms. Webster.

8. The evidence was further insufficient in that the Commonwealth failed to prove beyond a reasonable doubt that the Defendant was not acting in self-defense where it was uncontradicted that Noll was asleep, snoring and suddenly awakened by the physically aggressive victim causing Noll to fear for his safety and act out of self-preservation, i.e. self-defense.

9. The verdicts were otherwise against the weight of the credible evidence at trial including, for example, that the jury disregarded or did not comprehend that even if it found the elements of the charges of simple assault and recklessly endangering another person were met, the Defendant should still have been found not guilty if the Commonwealth failed to disprove the claim of self-defense; such a result is so shocking as to make the award of a new trial imperative so that right may be given the opportunity to prevail.[12]

This Court's opinion in support of our Order of Court, In Re: Sentencing & Bail Pending Appeal, is written pursuant to Pennsylvania Rule of Appellate Procedure 1925(a).

## STATEMENT OF FACTS

On November 1, 2013, Senior Patrolman Bradley Sheetz (Ptl. Sheetz) of the Hampden Township Police Department received a call from Mary Webster.[13] During that call, Ms. Webster informed Ptl. Sheetz that she wished to report a domestic assault.[14] Ptl. Sheetz explained to Ms. Webster that he does not take domestic assault reports over the telephone and therefore arranged to speak with her in person at her place of employment, E & E Restaurant.[15] When Ptl. Sheetz arrived at the restaurant, Ms. Webster was in an office area in the back of the restaurant.[16] Ptl. Sheetz testified at trial that when he first saw Ms. Webster, she "had what looked like a softball sized contusion on her cheek. . . .

---

[12] Defendant's Concise Statement of the Errors Complained of on Appeal, March 21, 2014, ¶¶ 1-9.

[13] Transcript of Proceedings, In Re: Jury Trial, July 9, 2013 (Peck, J.) (hereinafter "N.T. 7/9/2013 at __") at 116-17.

[14] N.T. 7/9/2013 at 117.

[15] N.T. 7/9/2013 at 117.

[16] N.T. 7/9/2013 at 117.

4

She had trouble speaking because she couldn't open her jaw all the way."[17] He also testified that he could see marks on her neck.[18] A photograph taken by Ptl. Sheetz to document those injuries was admitted into evidence as Commonwealth's Exhibit 4.[19] Ptl. Sheetz further testified that Ms. Webster did not show any signs of intoxication and that her difficulty speaking, in his opinion, was a result of the injury to her jaw, which appeared to be broken.[20]

According to Ptl. Sheetz, Ms. Webster provided him with information regarding the location of the house where the assault occurred, although she could not provide a precise address.[21] Ptl. Sheetz then contacted Corporal Speck of the Hampden Township Police Department, requesting that Corporal Speck attempt to contact the individual who assaulted Ms. Webster.[22]

Based upon the information provided by Ptl. Sheetz, which included Defendant's name, Corporal Speck was able to locate the residence of Defendant's mother and stepfather.[23] Corporal Speck knocked on the door which was answered by a woman, who, according to Corporal Speck, did not seem surprised to see him.[24] He asked to speak with Defendant.[25] When Defendant came to the door, Corporal Speck asked him to step outside to speak with him.[26] Defendant was talkative and began to explain what had happened and told Corporal Speck that he wanted the Corporal to know his side of the story.[27] Defendant told the Corporal that:

---

[17] N.T. 7/9/2013 at 117.

[18] N.T. 7/9/2013 at 117.

[19] N.T. 7/9/2013 at 118.

[20] N.T. 7/9/2013 at 118-19. Ptl. Sheetz called for an ambulance out of concern for Ms. Webster's health. However, EMS did not take Ms. Webster to the hospital, and it was later determined that her jaw was not broken. See N.T. 7/9/2013 at 118, 122-23, 144.

[21] N.T. 7/9/2013 at 120.

[22] N.T. 7/9/2013 at 120.

[23] N.T. 7/9/2013 at 165.

[24] N.T. 7/9/2013 at 165-66.

[25] N.T. 7/9/2013 at 166.

[26] N.T. 7/9/2013 at 166.

[27] N.T. 7/9/2013 at 167.

5

> he was with a girlfriend and that they were in bed together and advised that they had fallen asleep. And while he was sleeping, he felt the hand of the woman he was with on his face. He said that he awoke[;] he felt that he couldn't breathe. And he used the term self-defense[;] he rolled over on to her and then began striking her in self-defense.[28]

Defendant told the Corporal that he believed Ms. Webster's hand was on his face to stop him from snoring.[29] He also told the Corporal that Ms. Webster's attempt to stop his snoring was aggressive and that he therefore needed to defend himself.[30] According to Corporal Speck, Defendant "seemed very anxious to give [him] these details . . . ."[31] Based upon the information Corporal Speck had received from Ptl. Sheetz and on Defendant's own admissions, Defendant was taken into custody.[32]

Detective Crawford Gingrich of the Hampden Township Police Department transported Defendant from the Department's temporary holding cell to his preliminary arraignment.[33] During the transport, Defendant complained that he did not get his side of the story across, presumably referring to his exchange with Corporal Speck, and asked Det. Gingrich if he would be willing to listen to his side of the story.[34] While the version Defendant told Det. Gingrich also began with Ms. Webster covering his mouth and nose, which startled him awake, it diverged from there. He told Det. Gingrich that he shoved Ms. Webster away, as opposed to rolling over on to her,[35] and that Ms. Webster, in turn, grabbed his glasses and threw them across the room, scratching Defendant's nose in the process.[36] Ms. Webster, in this version, then punched Defendant who reciprocated by

---

[28] N.T. 7/9/2013 at 168-69.

[29] N.T. 7/9/2013 at 169.

[30] N.T. 7/9/2013 at 173.

[31] N.T. 7/9/2013 at 170.

[32] N.T. 7/9/2013 at 176.

[33] N.T. 7/9/2013 at 179.

[34] N.T. 7/9/2013 at 179.

[35] See, *supra*, note 25.

[36] N.T. 7/9/2013 at 180.

6

punching her.[37] While the beginning and ending of the story remained the same, Defendant clearly expanded upon his previous telling, perhaps attempting to shore up his claim of self-defense by alleging that Ms. Webster struck him first, a detail conspicuously missing from the version Defendant was so anxious to tell Corporal Speck.

At Defendant's preliminary hearing, Defendant told a third version of the events of October 31, 2012, which Patrolman Joshua Pressel of the Hampden Township Police Department, who was present at the hearing, recounted for the jury.[38] This version followed that told to Det. Gingrich but with the addition of a prologue and an epilogue. The prologue, as testified to by Defendant at his preliminary hearing, simply consisted of Defendant and Ms. Webster having sexual intercourse prior to going to sleep on the night of the assault.[39] The epilogue, on the other hand, seemed calculated to account for bruising on Ms. Webster - which Defendant would not have been aware of prior to her testifying at his preliminary hearing - not attributable to being punched in the face by Defendant. In this third telling of Defendant's side of the story, Ms. Webster fell on her stomach after being punched by Defendant and then began flailing.[40] Defendant got on top of her and put his arm around her neck, telling her to calm down or he would call 911.[41] Defendant, according to his own testimony, held Ms. Webster in this position for approximately one to two minutes.[42]

At trial, Defendant, who proceeded pro se, again testified on his own behalf. While the general outline of the events of October 31st remained the same as Defendant's preliminary hearing testimony, there were some additions. For instance, Defendant testified at trial that he had been made aware of $60 that was missing from his

---

[37] N.T. 7/9/2013 at 182.

[38] N.T. 7/9/2013 at 189.

[39] N.T. 7/9/2013 at 193.

[40] N.T. 7/9/2013 at 194.

[41] N.T. 7/9/2013 at 194.

[42] N.T. 7/9/2013 at 194.

7

stepfather's wallet on the night of the assault.[43] Presumably suspecting Ms. Webster of theft, he suggested they take a walk to discuss the missing money.[44] Ms. Webster vehemently denied taking the money.[45] According to Defendant, Ms. Webster then stated that she needed a drink.[46] The two walked to the liquor store, and Ms. Webster purchased a bottle of Jim Beam.[47] Once that bottle was empty, Ms. Webster bought a bottle of vodka.[48] At this point, she and Defendant returned home.[49]

Moving forward to Defendant's testimony regarding the assault, Defendant testified that *after* he "jumped on top of her from behind" Ms. Webster "start[ed] flailing around, knocking things over," and, in the midst of holding her while she was allegedly flailing around and knocking things over, he to noticed that the bottle of vodka that Ms. Webster had bought that evening was now three-quarters empty.[50] Defendant then insinuated that Ms. Webster had consumed the vodka all on her own. According to Defendant, once Ms. Webster had calmed down he told her to "go take a shower, sober up, do something."[51] Ms. Webster took a shower, after which she and Defendant went back to sleep.[52] The next morning, Defendant's stepfather told Ms. Webster that she had to leave.[53]

On cross-examination, the Commonwealth asked Defendant, "[t]hat night, prior to you two going to bed, she did not have these kind [sic] of bruises on her face and neck, is

---

[43] N.T. 7/9/2013 at 253, 258. Defendant mentioned this allegedly missing money six times during the course of his testimony, including stating, "[i]t's bad enough that my step dad is missing $60," N.T. 7/9/2013 at 258, and "[i]t's bad enough that there's $60 missing," N.T. 7/9/2013 at 259. See N.T. 7/9/2013 at 253, 254, 258, 259, 261, and 278.

[44] N.T. 7/9/2013 at 253.

[45] N.T. 7/9/2013 at 253.

[46] N.T. 7/9/2013 at 253.

[47] N.T. 7/9/2013 at 254, 257-58.

[48] N.T. 7/9/2013 at 254.

[49] N.T. 7/9/2013 at 254.

[50] N.T. 7/9/2013 at 257.

[51] N.T. 7/9/2013 at 258.

[52] N.T. 7/9/2013 at 258.

[53] N.T. 7/9/2013 at 259.

8

that correct?"[54] Defendant responded that the bruise on the side of Ms. Webster's face resulted from him punching her.[55] However, he claimed that he did not know whether she had a bruise on her neck prior to the night of the assault.[56] Defendant did, nonetheless, admit that he "had [his] arm around her *neck*, around her *neck* from behind and held on to her."[57] And while he initially testified on direct that Ms. Webster did not pass out, he also testified that "[i]f she did, it was for like a second."[58]

Ms. Webster also testified at trial. Her testimony contradicted that of Defendant on the key facts at issue. Ms. Webster testified that she met Defendant, who was riding his bicycle at the time, while crossing the street near where she worked.[59] He stopped and introduced himself and, after some conversation, they exchanged phone numbers.[60] To the best of her recollection, that initial meeting occurred near the end of August or beginning of September 2012.[61] In mid-October, Ms. Webster fell on hard times and was without a place to stay.[62] She testified that Defendant offered for her to stay with him at his mother's and stepfather's house and she accepted his offer.[63] Shortly thereafter, Ms. Webster, who was then staying with Defendant, informed him that, while living in Florida, she had been convicted of prostitution and that she had been arrested for murder, although that charge had been dropped.[64] She also testified that she had been convicted of grand theft and grand theft auto, also while living in Florida.[65]

---

[54] N.T. 7/9/2013 at 265.

[55] N.T. 7/9/2013 at 265.

[56] N.T. 7/9/2013 at 265.

[57] N.T. 7/9/2013 at 269 (emphasis added).

[58] N.T. 7/9/2013 at 258.

[59] N.T. 7/9/2013 at 126.

[60] N.T. 7/9/2013 at 126.

[61] N.T. 7/9/2013 at 126.

[62] N.T. 7/9/2013 at 126.

[63] N.T. 7/9/2013 at 126.

[64] N.T. 7/9/2013 at 148-49.

[65] N.T. 7/9/2013 at 128.

On October 31, 2012, Defendant informed Ms. Webster, who was still staying with Defendant, that $60 was missing from his stepfather's wallet.[66] Defendant, Ms. Webster testified, told her that she better discuss the missing money with him.[67] To that end, they went for a walk and stopped at a liquor store where Ms. Webster bought a bottle of whiskey.[68] According to Ms. Webster, she bought the bottle to prevent Defendant from stealing one.[69] Although she bought the bottle for both of them, she testified that she drank only a small amount of the whiskey.[70] After the whiskey was gone, Ms. Webster purchased a bottle of vodka, and she and Defendant began walking back to the house.[71] Once they returned to the house, Ms. Webster and Defendant went to sleep.[72]

During the night, Ms. Webster was awakened by Defendant's snoring.[73] She testified that on previous occasions when Defendant would snore she would nudge him and he would stop.[74] However, on this occasion, Ms. Webster nudged Defendant and, in response, he hit her hard on the side of her face.[75] She testified that she remembers then struggling to get away from Defendant, who was holding her down.[76] She was able to free one hand and scratched Defendant's face.[77] Defendant then began to choke her.[78] In Ms. Webster's own words:

---

[66] N.T. 7/9/2013 at 129.

[67] N.T. 7/9/2013 at 129.

[68] N.T. 7/9/2013 at 130.

[69] N.T. 7/9/2013 at 151.

[70] N.T. 7/9/2013 at 130.

[71] N.T. 7/9/2013 at 131.

[72] N.T. 7/9/2013 at 133.

[73] N.T. 7/9/2013 at 134.

[74] N.T. 7/9/2013 at 134.

[75] N.T. 7/9/2013 at 134. On cross-examination, Ms. Webster was asked if she had put her hand on Defendant's nose and mouth and woke him up. She responded, "I have never put my hand over anyone's nose and mouth in my life ever." N.T. 7/9/2013 at 155.

[76] N.T. 7/9/2013 at 134-35.

[77] N.T. 7/9/2013 at 135.

[78] N.T. 7/9/2013 at 135.

> He was on top of me and he was choking me and I couldn't breathe and I tried to yell . . . . I started to black out. And I started thinking about the police coming to my daughters' door and telling them that their mom was dead. And I started saying my prayers. And my bowels let go and I passed, basically passed out for a little bit. And I thought I was going to die. I thought it was over for sure for me that night. I thought it was over for me, I thought that was the end of my life. I've never felt that way before.[79]

After Ms. Webster lost control of her bowels, Defendant let go.[80] Defendant then told her to go wash.[81] When she returned from washing, Defendant told her to lie down and go to sleep, which she did.[82] She testified that she stayed because she was scared and because she was unable to find her phone after returning from washing up.[83]

In the morning, Defendant's stepfather told Ms. Webster and Defendant that they had to leave.[84] He also told Ms. Webster to get her stuff and that he would take her to work.[85] Once at work, Ms. Webster called the police.[86]

While on the witness stand, the Commonwealth showed Ms. Webster a photograph which she identified as a photograph taken of her on November 1st.[87] Ms. Webster testified that she did not have any of the bruises visible in that photograph prior to October 31st.[88] Ms. Webster identified a bruise on her left cheek as the result of Defendant punching her and identified bruising on her neck as the result of Defendant choking her.[89] The Commonwealth then showed Ms. Webster two more photographs

---

[79] N.T. 7/9/2013 at 137.

[80] N.T. 7/9/2013 at 137.

[81] N.T. 7/9/2013 at 137.

[82] N.T. 7/9/2013 at 137.

[83] N.T. 7/9/2013 at 138.

[84] N.T. 7/9/2013 at 138.

[85] N.T. 7/9/2013 at 138.

[86] N.T. 7/9/2013 at 139.

[87] N.T. 7/9/2013 at 140.

[88] N.T. 7/9/2013 at 141.

[89] N.T. 7/9/2013 at 142.

11

which she identified as photographs taken of her one week after the assault.[90] She testified that the bruising visible on her face and neck in those photographs was the same bruising caused by Defendant one week prior to the photographs being taken.[91]

Regarding her injuries, Ms. Webster testified that her jaw was not broken but she had pain when she spoke, she could only eat soft foods for about a week, and she had a large lump on her jaw for about two months.[92] She also testified that she was fired after the incident because "after all of that . . . they couldn't keep [her] there."[93]

Finally, the Commonwealth called Larry Snyder, Defendant's stepfather, to testify. Contrary to Defendant's testimony, which included numerous mentions of $60 missing from Mr. Snyder's wallet, Mr. Snyder testified that "we never had any money missing."[94]

In addition to the testimony detailed above, the Court informed the jury that the Commonwealth and Defendant had stipulated to the fact that Defendant was convicted of False Identification to Law Enforcement on April 27, 2011.[95]

At the conclusion of the trial, the jury found Defendant found guilty at Count 2-A, Simple Assault, attempt to cause bodily injury, a misdemeanor of the second degree, at Count 2-B, Simple Assault, bodily injury caused, a misdemeanor of the second degree, and at Count 4, Recklessly Endangering Another Person, also a misdemeanor of the second degree. Defendant was found not guilty of Aggravated Assault.[96] This Court found Defendant guilty of Harassment, a summary offense.[97] On August, 6, 2013,

---

[90] N.T. 7/9/2013 at 142.

[91] N.T. 7/9/2013 at 143-44.

[92] N.T. 7/9/2013 at 144, 160.

[93] N.T. 7/9/2013 at 145.

[94] N.T. 7/9/2013 at 302.

[95] N.T. 7/9/2013 at 298.

[96] Order of Court, In Re: Verdict/Appear for Sentence/Bail (July 9, 2013). This Order was amended on July 19, 2013, to reflect the proper date of July 10, 2013. See Amending Order of Court, In Re: Defendant Found Guilty & Verdict/Appear for Sentence/Bail (July 19, 2013). Count 3, Intimidation of Witnesses or Victims, was withdrawn by the Commonwealth on July 8, 2013. See Order of Court, In Re: Commonwealth Withdraws Count 3 (July 8, 2013).

[97] Order of Court, In Re: Defendant Found Guilty (July 9, 2013).

12

Defendant, pro se, appeared for sentencing before this Court.[98] At Defendant's sentencing proceedings, Defendant stated that "[a]ll my problems, including this case, go back to drinking."[99] We agreed with Defendant, telling him that "[d]rinking is clearly the issue from what I see."[100] Defendant was also provided with a copy of Ms. Webster's Victim Impact Statement which he reviewed and, after we asked Defendant if he needed more time to review that document, responded that he did not.[101] Notably, Defendant did not at that time raise any concerns regarding the Victim Impact Statement. The Court then turned to the Commonwealth for its recommendation. The Commonwealth referred the Court to the Pre-Sentence Investigation (PSI) prepared by the Cumberland County Probation Department:

> which details at great length [Defendant's] prior attempts to be supervised unsuccessfully by the Probation Department of Cumberland County; specifically, that he has been sentenced to prior alcohol screenings and alcohol-related sentences and has not complied with any of those requirements. That coupled with the Defendant's immense criminal history, of which largely consists of violent offenses, it is the basis for Probation recommending a State incarceration sentence.[102]

Based upon the above information, including Defendant's admission that drinking is the cause of his problems, we sentenced Defendant as follows: at Count 2-B to undergo a period of incarceration in a State Correctional Facility of not less than one year nor more than two years, to pay the costs of prosecution, and a fine of $100.00, at Count 4 to undergo a period of incarceration in a State Correctional Facility of not less than one year nor more than two years, to run consecutively to the sentence imposed at Count 2-B, to

---

[98] Transcript of Proceedings, In Re: Sentencing Proceedings, August 6, 2013 (Peck, J.) (hereinafter "Sentencing at __").

[99] Sentencing at 3.

[100] Sentencing at 9.

[101] Sentencing at 6.

[102] Sentencing at 10.

13

pay the costs of prosecution, and a fine of $100.00, and at Count 5 to pay the costs of prosecution.[103]

On August 23, 2013, Defendant filed counseled post-sentence motions which were nearly identical to Defendant's current errors complained of on appeal.[104] On February 7, 2014, we denied Defendant's Supplemental Post-Sentence Motions.[105] Defendant then filed this timely appeal.

## DISCUSSION

### A. Sentence of the Court.

Defendant challenges the sentence imposed by this Court on several grounds. First, Defendant complains that this Court neglected to state its reasons on the record in support of its sentences which, Defendant alleges, were in the aggravated range. Second, the sentences imposed were made consecutive with each other without compelling reasons given. Third, the sentences imposed were manifestly excessive. And lastly, the sentences imposed for Simple Assault and Recklessly Endangering Another Person should have merged. We disagree.

In general, "[s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." Commonwealth v. Perry, 883 A.2d 599, 602 (Pa.Super. 2005). A sentence constitutes an abuse of discretion if:

> the sentence imposed . . . either exceed[s] the statutory limits or [is] manifestly excessive. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

---

[103] Order of Court, In Re: Sentencing & Bail Pending Appeal (August 6, 2013). Count 2-A merged with Count 2-B for the purposes of sentencing. All sentences were within the standard range. See Pennsylvania Commission on Sentencing, Guideline Sentence Form, filed August 6, 2014.

[104] Defendant's Supplemental Post-Sentence Motions, filed August 23, 2013.

[105] Order of Court, In Re: Defendant's Supplemental Post-Sentence Motions (February 7, 2014).

14

Id. "In determining whether a sentence is manifestly excessive, the appellate court must give great weight to the sentencing court's discretion, as he or she is in the best position to measure factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference." Commonwealth v. Mouzon, 828 A.2d 1126, 1128 (Pa. Super. 2003). Accordingly, the sentencing court "has broad discretion in choosing the range of permissible confinements which best suits a particular defendant and the circumstances surrounding his crime." Commonwealth v. Boyer, 856 A.2d 149, 153 (Pa. Super. 2004). "In setting sentence, a court has discretion . . . to run the sentence concurrently with or consecutively to other sentences being imposed." Mouzon, 828 A.2d at 1130.

To begin, the sentences imposed for Simple Assault and Recklessly Endangering Another Person were not in the aggravated range but were rather standard range sentences. The standard range for both offenses was 6 to 12 months.[106] While it is true that the top of the standard range overlapped the aggravated range, which did not, in fact, consist of a range but was simply 12 months for both offenses, such overlap was the result of Defendant's prior record score generating a standard range extending to the lawful maximum, thus leaving no room for an aggravated range. In other words, an aggravated range beyond 12 months, which was the top of the standard range, would have resulted in a maximum sentence beyond the statutory maximum of 24 months. Such a sentence would clearly be illegal. Thus, Defendant, by styling his sentence as an aggravated range sentence, is essentially attempting to benefit from his extensive and violent criminal history, a history that has pushed the standard range as far as is legally permissible for the offenses at hand. Such dissembling by Defendant should be given no weight in addressing Defendant's appeal.

Beyond Defendant's attempt at misdirection, he also complains that we did not state our reasons on the record for the sentences imposed. The record speaks to the contrary. We explicitly informed Defendant at his sentencing that we believed his

---

[106] Pennsylvania Commission on Sentencing, Guideline Sentence Form, filed on August 6, 2013.

15

drinking is the primary cause of his criminal behavior.[107] The Commonwealth also stated, on the record, that the Probation Department of Cumberland County, as detailed in Defendant's PSI, which we had reviewed prior to sentencing, has been unable to effectuate any change in Defendant's relationship with alcohol.[108] Consequently, we determined that Defendant's rehabilitative needs would best be served by state incarceration. Contrary to Defendant's claim, his long-time alcohol addiction, or rather his failure to address his addiction, his failure to use the treatment resources provided to him during previous periods of supervision to any end result, and his repeated use of addiction as an excuse for criminal conduct, was a primary consideration in our imposing the sentences we did.

With respect to Defendant's claim that the consecutive standard range sentences imposed were manifestly unreasonable, we vehemently disagree. Defendant, at sentencing, not only expressed no remorse for the harm he caused Ms. Webster but also continued to avoid taking responsibility for his actions. Instead, Defendant told this Court that he wished he had never met Ms. Webster and that he "could care less about what she is doing, what happened to. . .", cutting himself off after presumably realizing that sentencing may not be the appropriate forum for displaying his callous thoughts regarding Ms. Webster.[109] We also determined that these crimes of senseless brutality, which included Defendant choking Ms. Webster until she passed out and defecated - solely because she nudged Defendant in order to stop his snoring, were further reflective of Defendant's violent nature and therefore state incarceration was necessary, both for the protection of the public and, again, for the rehabilitative needs of Defendant, which prior county incarcerations have been unable to fulfill. Accordingly, we sentenced Defendant to two to four years of state incarceration, a sentence we believe to be best suited to this Defendant and these crimes. Perhaps the prospect of spending four years in the custody

---

[107] Sentencing at 9.

[108] Sentencing at 10.

[109] Sentencing at 7.

16

of the state prison system will properly motivate Defendant to address his alcohol addiction and criminal conduct.

Defendant also claims this Court relied upon "an error-plagued, incomplete and biased presentence report recommending state prison primarily based on prior criminal history which is already reflected in the sentencing guidelines . . . ."[110] While Defendant challenged the accuracy of the PSI in his post-sentence motions, particularly relating to summary convictions that Defendant alleged were double counted, Defendant made clear at a hearing on those motions that he was not contesting his prior record score of 5.[111] In other words, his challenge to the PSI would have no bearing on sentencing guidelines even if he were successful. Moreover, the alleged inaccurate history of summary offenses contained in Defendant's criminal history, which spans nearly thirty years, exerted no influence over the sentence we imposed.

With respect to the recommendation of state incarceration contained in the PSI, we first note that imposing a sentence of incarceration and determining where that incarceration shall be served are independent determinations. The fact that the sentencing guidelines reflect Defendant's prior record score does not render consideration of Defendant's criminal history improper when determining where Defendant should stand committed.

Section 9762(a)(2) of Title 42 states:

> all persons sentenced to total or partial confinement for the following terms shall be committed as follows:
> . . .
> (2) Maximum terms of two years or more but less than five years may be committed to the Department of Corrections for confinement or may be committed to a county prison within the jurisdiction of the court.

42 Pa.C.S.A. § 9762(a)(2). In making a determination pursuant to subsection (a)(2), "a court should consider the differences between the state and county prison environment in

---

[110] Defendant's Concise Statement of the Errors Complained of on Appeal, March 21, 2014, ¶ 2(d)

[111] Transcript of Proceedings, In Re: Defendant's Supplemental Post-Sentence Motions, December 17, 2013 (Peck, J.) (hereinafter "Post-Sentence at __") at 27.

17

choosing to sentence an individual to a state rather than a county facility." Commonwealth v. Fullin, 892 A.2d 843, 852 (Pa. Super. 2006). Moreover, Defendant's sentencing level for both the Simple Assault and Recklessly Endangering Another Person, based on the standard range of the guidelines, was Level 3. Pursuant to Section 303.11 of Title 204 of the Pennsylvania Code, "[t]he primary purposes of this level are retribution and control over the offender." 204 Pa. Code § 303.11(b)(3). To that end, one of the sentencing options available pursuant to subsection (b)(3) is total state confinement. 204 Pa. Code § 303.11(b)(3). Considering the differences in the state and county prison environments with respect to dealing with a violent repeat offender, weighing the appropriate amount of retribution for Defendant's senseless acts of violence perpetrated upon Ms. Webster and for the effect that violence had on Ms. Webster, both physical and emotional, considering Defendant's continued abuse of alcohol which county incarceration and county probation have been unable to ameliorate, and accounting for the recommendation of Adult Probation which has had extensive dealings with Defendant, we determined that state incarceration was necessary.

In addition to the periods of incarceration imposed, we ordered Defendant to pay a total of $200 in fines. Defendant now challenges those fines, contending that there was insufficient detail in the PSI from which this Court could ascertain Defendant's ability to pay. We disagree. The PSI contained Defendant's work history from which we determined the appropriate fines to impose. We note that the fines imposed are each 1/50[th] of the $5,000 statutory maximum for a misdemeanor of the second degree.

Before moving on, we feel compelled to address Defendant's complete mischaracterization of Ms. Webster's Victim Impact Statement. In his second error complained of, Defendant states, "the victim statement was . . . a blatant 'recommendation for jail' (retribution) by the victim (who did not appear for sentencing) through the District Attorney rather than a proffer of any actual impact sustained by the victim to her life or circumstances caused at the hands of the Defendant . . . ."[112] Either

---

[112] Defendant's Concise Statement of the Errors Complained of on Appeal, March 21, 2014, ¶ 2(e).

18

Defendant did not in fact read Ms. Webster's statement, despite having told this Court prior to sentencing that he had, or he is attempting to willfully mislead this Honorable Court as it considers his appeal.

In her statement, contrary to Defendant's claim, Ms. Webster directly addressed the impact Defendant's violence had on her, stating:

> I went through serious physical pain, but more so extreme emotional trauma because of Mr. Noll's actions. I spent over 3 mos. in a DVS Shelter and had a very difficult time pulling my life back together. I have been affected in every aspect of my life. I am grateful to be alive today and this is what gets me through and gives me courage to move on.[113]

Moreover, nowhere in her statement did Ms. Webster ask or encourage this Court to incarcerate Defendant. Rather, Ms. Webster merely hoped and prayed that Defendant would get "the help he needs to make sure he never does this to anyone else."[114] We hope the same.

Defendant claims in his third error that the sentence imposed constitutes cruel and unusual punishment. "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences which are grossly disproportionate to the crime." Commonwealth v. Baker, 78 A.3d 1044, 1047 (Pa. 2013). Defendant's sentence is neither extreme nor grossly disproportionate. This claim is without merit.

Defendant also challenges his sentence based upon the claim that his convictions for Simple Assault and Recklessly Endangering Another Person should have merged for sentencing purposes. This issue was squarely resolved by our Superior Court in Commonwealth v. Calhoun, 52 A.3d 281 (Pa. Super. 2012). In Calhoun, the Court concluded that "there are distinct elements in both crimes . . . precluding merger for sentencing purposes." Calhoun, 52 A.3d 281, 289 (Pa. Super. 2012). As the Court

---

[113] Defendant's Concise Statement of the Errors Complained of on Appeal, Exhibit A.

[114] Id.

19

reasoned, "Section 9765 [of the Judicial Code][115], particularly as elucidated by our Supreme Court in [*Commonwealth v. Baldwin*, 985 A.2d 830 (Pa. 2009)], evinces a clear intent to confine merger for sentencing purposes to the defined condition that all of the statutory elements of one of the offenses are included in the statutory elements of the other." Id. at 285. Thus Defendant should be denied relief.

### B. Sufficiency of the Evidence.

Defendant's next four claims of error attack the sufficiency of the evidence with respect to his convictions for Simple Assault, Recklessly Endangering Another Person, and Harassment, as well as the Commonwealth's proof that Defendant was not acting in self-defense. For the reasons below, we find that there was sufficient evidence for all of the above and that Defendant's claims are therefore meritless.

In reviewing sufficiency of evidence claims, a court:

> must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all the elements of the offense. Additionally, to sustain a conviction, the facts and circumstances which the Commonwealth must prove, must be such that every essential element of the crime is established beyond a reasonable doubt. . . . The fact finder is free to believe all, part, or none of the evidence presented at trial.

Commonwealth v. Moreno, 14 A.3d 133, 136 (Pa. Super. 2011) (internal citations omitted). "It is well settled that a jury or a trial court can believe all or a part of or none of a defendant's statements, confessions or testimony, or the testimony of any witness." Commonwealth v. Morales, 2014 WL 1669802, No. 629 CAP (Pa. Apr. 28, 2014). The jury is not obliged to accept a defendant's evidence. Commonwealth v. Morales, 2014 WL 1669802, No. 629 CAP (Pa. Apr. 28, 2014).

---

[115] Section 9765 states, in part, "[n]o crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense." 42 Pa.C.S.A § 9765.

20

All of Defendant's sufficiency claims stem from Defendant's inability to acknowledge or accept that, as was its prerogative, the jury simply did not credit his testimony.

## Simple Assault

A defendant is guilty of Simple Assault if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another." 18 Pa.C.S.A. § 2701(a)(1). Bodily injury is defined as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301.

In the present matter, Defendant testified that he intentionally punched Ms. Webster in the face. Ms. Webster testified that, as a result of being punched, she had pain when she spoke, she could only eat soft foods for about a week, and she had a large lump on her jaw for about two months.[116] Thus, there was sufficient evidence to convict Defendant of Simple Assault.

## Recklessly Endangering Another Person

A defendant is guilty of Recklessly Endangering Another Person "if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705.

Ms. Webster testified at trial that Defendant choked her until she passed out and lost control of her bowels. By choking Ms. Webster until she passed out, Defendant placed Ms. Webster in danger of both death and serious bodily injury.[117] Therefore, the Commonwealth presented sufficient evidence to convict Defendant on this charge.

## Harassment

A defendant is guilty of Harassment if "with intent to harass, annoy or alarm another," the defendant: "(1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same[.]" 18 Pa.C.S.A. § 2709(a)(1).

---

[116] See In re M.H., 758 A.2d 1249 (Pa. Super. 2000) (holding that bruising on the victim's arm which lasted several days constituted bodily injury for the purposes of Simple Assault).

[117] See Commonwealth v. Brunson, 938 A.2d 1057 (Pa. Super. 2007) (holding that punching elderly man in the head and choking him constituted Recklessly Endangering Another Person).

21

"An intent to harass may be inferred from the totality of the circumstances."
Commonwealth v. Cox, 72 A.3d 719, 721 (Pa. Super. 2013).

Defendant admitted to Det. Gingrich that he shoved Ms. Webster away prior to punching her in the face. This Court, acting as the trier-of-fact for this summary charge, then inferred Defendant's intent to harass from the totality of the circumstances which included Defendant punching and choking Ms. Webster. Thus, there was sufficient evidence to find Defendant guilty of Harassment.

### Self-Defense

Defendant's final sufficiency claim states that "the Commonwealth failed to prove beyond a reasonable doubt that the Defendant was not acting in self-defense where it was uncontradicted that Noll was asleep, snoring and suddenly awakened by the physically aggressive victim causing Noll to fear for his safety and act out of self-preservation, i.e. self-defense."[118]

Section 505 of the Crimes Code provides that the use of force is justified for protection of the person "when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S.A. § 505(a). The Crimes Code defines 'believes' as "reasonably believes." 18 Pa.C.S.A. § 501. Our Supreme Court in Commonwealth v. Torres, 766 A.2d 342 (Pa. 2001), elaborated further, stating:

> [w]hen a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt. While there is no burden on a defendant to prove the claim, before the defense is properly at issue at trial, there must be some evidence, from whatever source, to justify a finding of self-defense. If there is any evidence that will support the claim, then the issue is properly before the fact finder.

Torres, 766 A.2d at 345.

In the present matter, Defendant presented evidence, through his own testimony, that he acted in self-defense, claiming that he awoke to Ms. Webster covering his mouth

---

[118] Defendant's Concise Statement of the Errors Complained of on Appeal, filed March 21, 2014, ¶ 8.

22

and nose and that Ms. Webster hit him first. Additionally, both Corporal Speck and Det. Gingrich testified that Defendant told them that he acted in self-defense. However, the reasonableness of Defendant's belief that the use of force was justified was belied by his own statement to Corporal Speck that Ms. Webster was attempting to stop his snoring. Thus Defendant realized that whatever actions Ms. Webster was taking would cease once he stopped snoring. As Defendant punched Ms. Webster after waking and then proceeded to choke her while she was on the floor, all after his snoring had stopped, there was no force, let alone unlawful force, which Defendant needed to protect himself against. Consequently, the jury was warranted in concluding that Defendant's belief in the necessity of force to protect himself was not a reasonable one. Moreover, Ms. Webster testified that she only nudged Defendant to stop his snoring and denied ever placing her hand over Defendant's mouth and nose, providing the jury, if she were believed, with sufficient evidence of the unreasonableness of Defendant's belief and concomitantly with sufficient evidence that Defendant's use of force was not justified. Accordingly, Defendant's claim is without merit.

Weight of the Evidence

Defendant's final error complained of is that the verdicts were against the weight of the evidence. Having reviewed the evidence, we disagree.

The standard for review of a claim that a verdict is against the weight of the evidence is well-established:

> [t]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, [an appellate court] may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

23

Commonwealth v. Champney, 832 A.2d 403, 408 (Pa. 2003).

The evidence adduced at trial consisted of three versions of the events on October 31st told by Defendant: one version to Corporal Speck, one version to Det. Gingrich, and one version at trial. The jury also was informed that Defendant had been convicted of False Identification to Law Enforcement, a crime of crimen falsi. Additionally, Defendant's stepfather testified that there was never any money missing from his wallet, contrary to Defendant's testimony in which he repeatedly stated that $60 dollars went missing while Ms. Webster was staying with Defendant. Defendant even appeared to be using the alleged missing $60 as support for his use of force, stating, "I normally don't wake up with a hand cuffed over my nose and mouth. And this is from someone that told me, hey, you know, I had a murder case in Florida and *money was missing from [my] step dad.*"[119] Under such circumstances, where Defendant has been inconsistent, has previously lied to law enforcement, and was contradicted by his own step father on a key fact in Defendant's justification claim, the jury's verdicts, which made clear that they did not find Defendant credible, were not against the weight of the *credible* evidence. Likewise, the jury's verdicts did not shock this Court's sense of justice as we found Ms. Webster wholly credible in her testimony. Thus this claim is without merit.

---

[119] N.T. 7/9/2013 at 261 (emphasis added).

24

## CONCLUSION

This Court concludes that it properly sentenced Defendant, that there was sufficient evidence to sustain the jury verdicts, and that the verdicts were not against the weight of the evidence. The issues raised by Defendant on appeal, therefore, are without merit.

BY THE COURT,

_____

Christylee L. Peck,    J.

Richard H. Bradbury, Jr., Esq.
Assistant District Attorney

John M. Shugars, Esq.
Senior Assistant Public Defender

25