**COMMONWEALTH of Pennsylvania**

v.

**Allen J. PERRY, Appellant.**

Superior Court of Pennsylvania.

Submitted April 18, 2005.
Filed Aug. 10, 2005.

Vincent J. Quinn, Lancaster, for appellant.

Andrea F. McKenna, Asst. Dist. Atty., Harrisburg, for Com., appellee.

BEFORE: FORD ELLIOTT, KLEIN, and KELLY, JJ.

OPINION BY FORD ELLIOTT, J.:

¶ 1 Allen J. Perry appeals from the judgment of sentence of April 27, 2004, after pleading *nolo contendere* to violating the Pennsylvania Securities Act of 1972, 70 P.S. § 1–101 *et seq.* We affirm.

¶ 2 According to the record, appellant sold unregistered securities to unsuspecting investors. Appellant placed ads in newspapers touting certificates of deposit (CDs) at favorable rates. When potential customers, most of them elderly and looking for a safe investment, came into his office, appellant would steer them toward the securities in a "bait-and-switch" tactic. Appellant would guarantee investment returns of 10–15% and tell his clients their money was insured with Lloyd's of London, which was a false statement. Appellant would give his clients the last one or two pages of a Service Agreement to sign, without showing them the entire document or explaining to them what they were signing. Two investment vehicles, Chemical Trust and First Choice, were used for this purpose. Although represented to be multi-billion dollar funds, these were, in fact, mere shell corporations. Clients' money was expatriated to off-shore bank accounts. In a classic Ponzi or pyramid scheme, the money was used to pay "interest" to existing investors. Typically, appellant's clients lost everything, including principal and interest.

¶ 3 Appellant was charged at No. 618 of 2003 with 70 counts of selling an unregistered security,[1] a first degree misdemeanor; 70 counts of acting as a broker-dealer or agent without being registered,[2] a first degree misdemeanor; and 70 counts of engaging in fraudulent or prohibited practices,[3] a third degree felony. (Docket No. 6.) At No. 2002 of 2003, appellant was charged with one count each of the above offenses. (Docket No. 22.)

¶ 4 On February 17, 2004, appellant entered an open plea of *nolo contendere* to 10 counts each of the above offenses for a total of 30 counts. On April 27, 2004, the Honorable Joseph C. Madenspacher sentenced appellant to an aggregate of 51 months to 12 years' imprisonment, followed by 12 years' probation. Appellant was also ordered to make restitution in the amount of $2,571,022.30.

¶ 5 Appellant filed a timely motion to modify and reduce sentence which was denied on August 20, 2004. On September 13, 2004, appellant filed the instant appeal. Appellant has complied with Pa.R.A.P. 1925(b); and on October 29, 2004, the trial court filed a 1925(a) opinion addressing the issues raised in appellant's concise statement.

¶ 6 Appellant brings the following issue for this court's review:

> Whether the imposition of consecutive sentences resulting in an aggregate term of imprisonment of not less than 51 months nor more than 12 years followed by 12 years of probation was a manifest abuse of discretion when [appellant] had no prior criminal record and there were substantial mitigating circumstances?

1. 70 P.S. § 1–201.

2. 70 P.S. § 1–301(a).

3. 70 P.S. § 1–401(b) & (c).

Appellant's brief at 5 (capitalization omitted).

■ ¶ 7 Appellant's sentence was within the statutory maximum fixed by the legislature. Therefore, appellant challenges the discretionary aspects of his sentence.

> [S]entencing is a matter vested in the sound discretion of the sentencing judge, whose judgment will not be disturbed absent an abuse of discretion. Appellant challenges the discretionary aspects of sentencing for which there is no automatic right to appeal. This appeal is, therefore, more appropriately considered a petition for allowance of appeal. Two requirements must be met before a challenge to the judgment of sentence will be heard on the merits. First, the appellant must set forth in his brief a concise statement of reasons relied upon for allowance of appeal with respect to the discretionary aspects of his sentence. Second, he must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. The determination of whether a particular issue raises a substantial question is to be evaluated on a case-by-case basis.

*Commonwealth v. Ritchey,* 779 A.2d 1183, 1185 (Pa.Super.2001) (citations omitted).

*Commonwealth v. Twitty,* 876 A.2d 433, 438 (2005).

■ ¶ 8 Appellant has filed the requisite statement pursuant to Pa.R.A.P. 2119(f). (Appellant's brief at 11–13.) Therein, appellant submits that his minimum sentence of 51 months was manifestly excessive and that the trial court failed to consider substantial mitigating factors presented on his behalf. Appellant argues that his sentence was contrary to the fundamental norms which underlie the sentencing process, and that the trial court focused solely on the serious nature of the offenses. Appellant states that in light of the record as a whole, including his expressions of remorse, desire to make restitution, lack of a prior criminal record, and the fact that he was not a principal organizer of the fraudulent investment schemes, his aggregate minimum sentence of 51 months' incarceration was excessive and unreasonable.

> Under *Commonwealth v. Mouzon,* 571 Pa. 419, 812 A.2d 617 (2002), an appellant making an excessiveness claim raises a substantial question when he 'sufficiently articulates the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular norm underlying the sentencing process.' *Id.* at 435, 812 A.2d at 627.

*Commonwealth v. Vega,* 850 A.2d 1277, 1280 (Pa.Super.2004). We determine that appellant has set forth plausible arguments that his sentence is contrary to the fundamental norms which underlie the sentencing process. *See Vega, supra* at 1280–1281. Therefore, we will proceed to address the merits of appellant's claims.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. To constitute an abuse of discretion, the sentence imposed must either exceed the statutory limits or be manifestly excessive. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Mouzon*, 828 A.2d 1126, 1128 (Pa.Super.2003) (citations and quotation marks omitted).

> In determining whether a sentence is manifestly excessive, the appellate court must give great weight to the sentencing court's discretion, as he or she is in the best position to measure factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference.

*Id.*, citing *Commonwealth v. Ellis*, 700 A.2d 948, 958 (Pa.Super.1997).

¶ 9 Appellant concedes that each of his sentences was within the standard range. Engaging in fraudulent or prohibited practices is a third degree felony punishable by up to seven years' imprisonment and a $100,000 fine. 70 P.S. § 1–511(b).[4] The standard range for a defendant with a prior record score of zero calls for a sentence of restorative sanctions ("RS") to nine months. 204 Pa.Code § 303.16. All numbers in sentence recommendations suggest months of *minimum* confinement pursuant to 42 Pa.C.S.A. § 9756(b). On five of the felony counts, appellant received sentences of nine months to two years; on a sixth count, he received a sentence of six months to two years. (Notes of testimony, 4/27/04 at 7.) On four more felony counts, appellant received three years' probation each; all sentences were to run consecutively for a total of 51 months to 12 years' incarceration followed by 12 years' probation. (*Id.* at 7–8.) On the remaining 20 counts, appellant received concurrent probationary sentences. (*Id.* at 8.) Therefore, all of appellant's sentences were within the standard range of the sentencing guidelines.

¶ 10 Appellant argues that his aggregate minimum sentence of 51 months was unreasonable, and that the trial court abused its discretion in imposing consecutive sentences. This argument is without merit. "In imposing a sentence, the trial judge may determine whether, given the facts of a particular case, a sentence should run consecutive to or concurrent with another sentence being imposed." *Commonwealth v. Wright*, 832 A.2d 1104, 1107 (Pa.Super.2003), citing *Commonwealth v. Rickabaugh*, 706 A.2d 826 (Pa.Super.1997); *see also Commonwealth v. L.N.*, 787 A.2d 1064, 1071 (Pa.Super.2001), *appeal denied* 569 Pa. 680, 800 A.2d 931 (2002).

¶ 11 Judge Madenspacher clearly disclosed his reasons for imposition of consecutive sentences on the record. First, appellant defrauded the victims in this case of over $2.5 million. (Notes of testimony, 4/27/04 at 3.) As the trial court stated, this is a significant amount of money. The sentencing guidelines do not already take into account the amount of money involved for a violation of 70 P.S. § 1–401. Therefore, this was a factor properly considered by the trial court. Although appellant argues he was working on a commission basis and was not the direct beneficiary of the money, this argument is unavailing. Whether or not appellant himself pocketed the money, his actions caused the victims in this case to collectively lose $2.5 million.

¶ 12 Second, there were 69 victims involved. (*Id.*) Judge Madenspacher re-

---

4. We note that a violation of Section 1–401 is now a felony of the second degree punishable by up to ten years' imprisonment and a $1,000,000 fine. P.L. 930, No. 132, § 3, effective Jan. 24, 2005; 70 P.S. § 1–511(b). If one or more of the victims of the unlawful conduct is 60 years of age or older, a person who willfully violates Section 1–401 now commits a felony of the first degree and may be fined not more than $5,000,000 and/or imprisoned for not more than 20 years, in addition to restitution. 70 P.S. § 1–511(c)(1) & (3).

ceived approximately 50 victim impact statements. (*Id.* at 2.) Third, most of the victims were elderly. (*Id.* at 3.) Many of them were relying on the money for their retirement or were on fixed incomes. (*Id.* at 3–4; Commonwealth's brief at 9–11.) Appellant's crimes have caused the victims great hardship and financial distress. The trial court observed that there is a legitimate interest in protecting our elderly population, particularly in areas of fraud where they may be unusually vulnerable. (Notes of testimony, 4/27/04 at 3; trial court opinion, 10/29/04 at 2.) Our legislature has manifested its concern for elderly victims of crimes in the Sentencing Code, *e.g.,* 18 Pa.C.S.A. § 4107, deceptive or fraudulent business practices, in which the penalties increase where the victim is 60 years of age or older. 204 Pa.Code § 303.15. The age of the victims was not already included in the guideline recommendations. Although 70 P.S. § 1–511(b) provided for an increased fine where any of the victims were individuals aged 60 or more, appellant was not fined; and unlike the current version of Section 1–511, there was no increased term of incarceration where the victims were age 60 or older.

¶ 13 Appellant argues that he was not a principal in the investment schemes, that he was working on a commission basis, and that he never intended for his clients to lose money. (Appellant's brief at 22.) Appellant states that he merely exercised poor judgment. (*Id.*) These arguments were considered and expressly rejected by the trial court. Judge Madenspacher noted that appellant is an educated man with an MBA, and should have known there is no such thing as an 11% guaranteed investment. (Notes of testimony, 4/27/04 at 4.) Even after Chemical Trust went under in January 2000, appellant continued to sell his clients similar unregistered securities through First Choice. (*Id.;* trial court opinion, 10/29/04 at 2.) In March 2000,

appellant failed to disclose these activities to the Securities and Exchange Commission. (Notes of testimony, 4/27/04 at 4.)

¶ 14 Appellant also argues that he is in his mid–40s and should be given the opportunity to make restitution to his victims. However, many of appellant's victims were elderly and at least three of them had already died at the time of appellant's sentencing. (*Id.* at 6.) There was testimony presented on behalf of appellant that over his remaining lifetime, he could make restitution of $500,000. (*Id.*) This is a fraction of the $2.5 million owed. In addition, it is unlikely appellant would find comparable employment with 30 counts of violating the Securities Act, including ten felony counts, on his criminal record.

¶ 15 Finally, appellant argues that the trial court did not consider mitigating evidence, including his lack of a prior criminal record, stable family background, good character, low risk for recidivism, and the fact that he accepted responsibility by entering an open plea. This argument is belied by the record.

¶ 16 Appellant's prior record score of zero was already included in the guidelines computation. Regarding his plea of *nolo contendere,* as the Commonwealth states, this is not the same as a guilty plea. In fact, on appeal, appellant portrays himself as an unwitting pawn. This is contrary to the trial court's findings and is not accepting responsibility for his actions.

¶ 17 The trial court was aware of appellant's background and the 125 letters written on his behalf. (*Id.* at 2.) The trial court read all of these letters as well as the victim impact statements. (*Id.*) The trial court carefully considered the testimony of appellant's wife and read her letter to the court "two or three times." (*Id.* at 6.) Pre-sentence memoranda were submitted by both the Commonwealth and appellant. (*Id.* at 2.) In addition, Judge Madenspacher had the benefit of a pre-

sentence report and considered appellant's character, which he conceded "is basically pretty good." (*Id.*) "Where the sentencing judge had the benefit of a pre-sentence report, it will be presumed that he was aware of relevant information regarding appellant's character and weighed those considerations along with the mitigating statutory factors." *L.N., supra* at 1071–1072, citing *Commonwealth v. Devers,* 519 Pa. 88, 101–102, 546 A.2d 12, 18 (1988).

¶ 18 The overall tone of appellant's brief plays down the seriousness of his offenses and their devastating impact on his elderly, vulnerable victims. Indeed, appellant challenges the discretionary aspects of his sentence which was well within the guidelines; and appellant received prison sentences on only six out of ten felony counts. The statutorily authorized maximum permitted an aggregate sentence of 70 years' imprisonment on the felony counts alone. Appellant's attitude is consistent with society's view of white-collar crime, which is that it is less serious than other types of crimes, particularly violent crimes. A reading of the victim impact statements in this case and the pre-sentence investigative report quickly dispels such notions; many of the victims here have had their lives utterly and irreversibly destroyed. Indeed, perhaps in response to well-publicized national corporate and accounting scandals, our legislature has ramped up the criminal penalties for white-collar crimes such as those committed here. We determine that the trial court considered all the relevant evidence, including mitigating evidence presented on behalf of appellant and clearly stated its reasons for the sentence on the record; we find no abuse of discretion.

¶ 19 Judgment of sentence affirmed.