J-S61014-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
DEVINE A. CAMPBELL, :
:
Appellant : No. 58 WDA 2014

Appeal from the Judgment of Sentence Entered December 4, 2013,
in the Court of Common Pleas of Mercer County,
Criminal Division at No. CP-43-CR-0000121-2012

BEFORE: FORD ELLIOTT, P.J.E., WECHT and STRASSBURGER,* JJ.

CONCURRING MEMORANDUM BY STRASSBURGER, J.:**FILED APRIL 27, 2015**

I join the Majority Memorandum except for its handling of Appellant's challenge to the discretionary aspects of his sentence. As to that issue, the Majority cites **Commonwealth v. Edwards**, 71 A.3d 323 (Pa. Super. 2013), for the proposition that allegations that a sentencing court "failed to consider" and "did not adequately consider" various factors does not raise a substantial question that a sentence was inappropriate. Majority Memorandum at 23-24. Indeed, **Edwards** supports such a proposition. However, as Judge Bowes cogently observed in **Commonwealth v. Dodge**, 77 A.3d 1263, 1272 n.8 (Pa. Super. 2013), "it is apparent that this Court's determination of whether an appellant has presented a substantial question in various cases has been less than a model of clarity and consistency[.]"

---

* Retired Senior Judge assigned to the Superior Court.

Recently, this Court has reiterated several times "that an excessive sentence claim—in conjunction with an assertion that the court **failed to consider** mitigating factors—raises a substantial question."[1] ***Commonwealth v. Raven***, 97 A.3d 1244, 1253 (Pa. Super. 2014) (emphasis added; citation omitted) (citing ***Commonwealth v. Perry***, 883 A.2d 599, 602 (Pa. Super. 2005)); ***Commonwealth v. Samuel***, 102 A.3d 1001, 1007 (Pa. Super. 2014); ***Commonwealth v. Gonzalez***, 2015 WL 252446, 15 (Pa. Super. 2015).

However, this Court has made no such determination regarding an excessive sentence claim coupled with an assertion that the sentencing court **failed to consider adequately** mitigating factors. For instance, in ***Commonwealth v. Disalvo***, 70 A.3d 900, 903 (Pa. Super. 2013), DiSalvo generally claimed that "the trial court abused its discretion by issuing a sentence that is manifestly excessive[.]" This Court ultimately concluded that "a claim of **inadequate consideration** of mitigating factors does not raise a substantial question for our review." ***Disalvo***, 70 A.3d at

---

[1] This Court also has distinguished arguments that the sentencing court failed to consider statutory factors from contentions that the sentencing court failed to consider facts of record. The Court has concluded that the former raises a substantial question and the latter does not. ***Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1266 (Pa. Super. 2014) ("[A]rguments that the sentencing court failed to consider the factors proffered in 42 Pa.C.S. § 9721 does present a substantial question whereas a statement that the court failed to consider facts of record, though necessarily encompassing the factors of § 9721, has been rejected.") (quoting ***Dodge***, 77 A.3d at 1272 n.8).

903 (emphasis added) (quoting **Commonwealth v. Downing**, 990 A.2d 788, 794 (Pa. Super. 2010)).

Here, Appellant seems to claim that his sentence is excessive because the trial court failed to consider adequately certain mitigating factors. Thus, consistent with this Court's recent precedent, I too conclude that Appellant's claim fails to raise a substantial question worthy of appellate review.

I also will briefly address Appellant's sufficiency-of-the-evidence claim. In my view, the Commonwealth only narrowly presented enough evidence to meet its burden of proving Appellant guilty of second-degree murder. More generally, I share the reservations regarding the validity of the felony-murder rule that our Supreme artfully expressed in **Com. ex rel. Smith v. Myers**, 261 A.2d 550 (Pa. 1970). The Court explained, in part, as follows.

> The common law felony-murder rule as thus explicated has been subjected to some harsh criticism, most of it thoroughly warranted. It has been said to be 'highly punitive and objectionable as imposing the consequences of murder upon a death wholly unintended.' 'An effect wholly unexpected and unconnected with the intention and act of the party, except by accident * * * (is) made the foundation of criminal responsibility.' [**Commonwealth v. Redline**, 137 A.2d 472, 476 (Pa. 1958),] related that 'a widely accepted and quite plausible explanation of the origin of the doctrine is that at early common law many crimes, including practically all, if not all, felonies were punishable by death so that it was of no particular moment whether the condemned was hanged for the initial felony or for the death accidentally resulting [from] the felony.' With a history like that it is hardly surprising that the rule has evoked bitter comment referring to it as 'a hold-over from the days of our barbarian Anglo-Saxon ancestors of pre-Norman days, [having] very little right to existence in modern society.'

A more temperate commentator suggests that the rule should be modified, so that a killing committed during the perpetration of a felony would create merely a [r]ebuttable presumption of intention, rather than the [c]onclusive presumption now created. Other opponents of the felony-murder rule point out that it is hardly an essential weapon in the Commonwealth's arsenal. Our neighboring state of Ohio has managed quite well without a felony-murder rule since abolishing it over a century ago.

In fact, not only is the felony-murder rule non-essential, but it is very doubtful that it has the deterrent effect its proponents assert. On the contrary, it appears that juries rebel against convictions, adopting a homemade rule against fortuities, where a conviction must result in life imprisonment. If added deterrence is desired, the felony-murder rule is not the right approach. The situation was well-analyzed many years ago: 'To punish as a murderer, every man who, while committing a heinous offence, causes death by pure misadventure, is a course which evidently adds nothing to the security of human life. * * * The only good effect which such punishment can produce will be to deter people from committing any of these offences which turn into murders what are in themselves mere accidents. It is in fact an addition made in the very worst way. * * * If the punishment for stealing from the person be too light, let it be increased, and let the increase fall alike on all the offenders! Surely the worst mode of increasing the punishment of an offence is to provide that, besides the ordinary punishment, every offender shall run an exceedingly small risk of being hanged.' To similar effect, Justice Oliver Wendell Holmes, in The Common Law, argued that the wise policy is not to punish the fortuity, but rather to impose severe penalties on those types of criminal activity which experience has demonstrated carry a high degree of risk to human life….

*Myers*, 261 A.2d at 553-54 (footnotes omitted).

Here, Appellant was convicted of second degree murder because his co-conspirator suddenly shot and killed the proprietor of the establishment they had conspired to rob. Although Appellant clearly did not intend to kill

- 4 -

the victim, under the felony-murder rule, he is guilty of second degree murder.