J-S40034-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ARTHUR SCHLABIG | : | |
| | : | |
| Appellant | : | No. 3815 EDA 2017 |

Appeal from the Judgment of Sentence August 29, 2017
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s):  CP-39-CR-0001150-2017

BEFORE:   LAZARUS, J., DUBOW, J., and PLATT*, J.

MEMORANDUM BY LAZARUS, J.:                **FILED JULY 24, 2018**

Arthur Schlabig appeals from his judgment of sentence, entered in the Court of Common Pleas of Lehigh County, after he entered an open guilty plea to one charge of aggravated assault of a child less than six years of age.[1] Upon careful review, we affirm.

The facts of this matter were summarized by the trial court as follows:

[Child] had been in the custody of [Schlabig] and his wife,[2] according to [Schlabig], for approximately nine (9) months prior to the "abusive head trauma."  On the night of the assault, [Schlabig's] wife was at work, and [Child] began to cry. [Schlabig] became "frustrated and grabbed [Child] and shook her

_____

[1] 18 Pa.C.S.A. § 2702(a)(8).

[2] Child, who was approximately one year old at the time of the incident, was born addicted to heroin.  Child was taken from her mother, who was incarcerated, and placed in the custody of Schlabig's wife.  Child's relationship, if any, to Schlabig's wife is not indicated in the record.  Following the incident with Schlabig, Child was removed from the Schlabig home and placed in foster care.  **See** N.T. Guilty Plea, 7/17/17, at 10.

_____

*   Retired Senior Judge assigned to the Superior Court.

repeatedly back and forth, [and] put her down." [Child], according to [Schlabig], then appeared to have a seizure, and so he called his wife. His wife returned to the residence and called 9-1-1. EMS responded and rushed [Child] to Lehigh Valley Hospital. [Child's] injuries were consistent with abusive head trauma, which was an indication that she had been violently shaken, with or without impact. Debra Esernio-Jenssen, M.D.[,] described it as a "violent force." [Schlabig], during an interview with a member of the Allentown Police Department, "acknowledged that he grabbed [Child] and shook her back and forth because she was crying."

Trial Court Opinion, 1/8/18, at 2 (citations to the record omitted). Child's injuries included bruising to her face, legs, and thighs; a subdural hematoma; and petechiae in the eye. N.T. Guilty Plea, 7/17/17, at 11.

On July 17, 2017, Schlabig pled guilty to aggravated assault, graded as a felony of the second degree. On August 29, 2017, following a pre-sentence investigation, the court sentenced Schlabig to the statutory maximum of 5 to 10 years' incarceration.[3] Schlabig filed a motion for reconsideration of sentence, which the trial court denied. This timely appeal follows, in which Schlabig raises the following issue for our review:

Whether the [trial] court abused its discretion in imposing manifestly excessive and unreasonable sentences when the court failed to consider any significant mitigating factors, failed to apply and review all the necessary factors as set forth in 42 Pa.C.S.A. § 9721(b) and 42 Pa.C.S.A. § 9781(c) and (d) or otherwise failed to set forth appropriate reasons for its decision?

Brief of Appellant, at 7.

---

[3] *See* 18 Pa.C.S.A. § 1103(2) ("a person who has been convicted of a felony may be sentenced to imprisonment as follows: . . . (2) In the case of a felony of the second degree, for a term which shall be fixed by the court at not more than ten years").

Schlabig's claim implicates the discretionary aspects of his sentence. Such a claim does not entitle an appellant to review as a matter of right. ***Commonwealth v. Swope***, 123 A.3d 333, 337 (Pa. Super. 2015). Rather, before this Court can address such a discretionary challenge, an appellant must comply with the following requirements:

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

***Id.***, quoting ***Commonwealth v. Allen***, 24 A.3d 1058, 1064 (Pa. Super. 2011).

Here, Schlabig filed a post-sentence motion raising his sentencing claim, followed by a timely notice of appeal to this Court. He has also included in his brief a concise statement of reasons relied upon for allowance of appeal with respect to the discretionary aspects of his sentence pursuant to Pa.R.A.P. 2119(f). Accordingly, we must now determine whether he has raised a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. ***Commonwealth v. Paul***, 925 A.2d 825, 828 (Pa. Super. 2007). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were

either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Commonwealth v. Griffin**, 65 A.3d 932, 935 (Pa. Super. 2013) (citation and quotation marks omitted).

In his Rule 2119(f) statement, Schlabig asserts that his sentence was excessive, as it exceeded the aggravated range of the sentencing guidelines,[4] and the trial court failed to consider the appropriate sentencing factors, as well as mitigating factors, as required by the Sentencing Code. This Court has previously held that an excessive sentence claim, in conjunction with an assertion that the court failed to consider mitigating factors, raises a substantial question. **Commonwealth v. Perry**, 883 A.2d 599, 602 (Pa. Super. 2005); **Commonwealth v. Raven**, 97 A.3d 1244, 1253 (Pa. Super. 2014). Accordingly, we will review the merits of Schlabig's claim.

We begin by noting our standard of review in sentencing matters:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

---

[4] Schlabig's crime carried an offense gravity score of 7 and his prior record score was zero. Accordingly, under the Sentencing Guidelines, the standard-range sentence was 6 to 14 months' incarceration, with an aggravated-range sentence of 12 to 20 months.

*Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014). Deference is accorded to the trial court's pronouncement of sentence because of the perception that the trial court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it. *Commonwealth v. Ward*, 568 A.2d 1242, 1243 (Pa. 1990). "When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S.A. § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant[.]" *Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa. Super. 2006). Furthermore, "[a] trial court judge has wide discretion in sentencing and can, on the appropriate record and for the appropriate reasons, consider any legal factor in imposing a sentence in the aggravated range." *Commonwealth v. Stewart*, 867 A.2d 589, 593 (Pa. Super. 2005) (citation omitted). The sentencing court must, however, consider the sentencing guidelines. *See Fullin*, 892 A.2d at 847. Finally, our Supreme Court has held that where a pre-sentence report ("PSI") exists, the presumption will stand that the sentencing judge was both aware of and appropriately weighed all relevant information contained therein. *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988).

Here, Schlabig claims that, in sentencing him to the statutory maximum sentence, the trial court failed to consider his serious mental health issues, his rehabilitative needs, and his acceptance of responsibility for his criminal

actions. Schlabig's claim is belied by the thorough record created by the trial court.

At sentencing, the court gave an extensive statement explaining why it chose to impose the sentence it did:

> THE COURT: Let the record reflect that I've reviewed the pre-sentence report. I've considered the sentencing guidelines in this matter. I have read Ms. Kidney's, I'll call it a letter, and I've heard Ms. Kidney's testimony about [Child] and [Child's] struggles, trials, and maybe we can even say triumphs over the time that she's been in Ms. Kidney's custody.
>
> I've considered the fact that the Defendant is a 42-year-old man. He has a prior record, but it's not significant for our purposes today. I've looked at the history of Mr. Schlabig. I don't disagree that he has mental health problems. I don't think that's an issue here. And I also recognize that not everything that happened to the victim . . . is at the hands of Mr. Schlabig, in the sense that [Child] was born to a mother who I'm going to say is addicted to heroin; and I'm sure that's created, and will create, some additional problems for [Child] in the years to come.
>
> But I don't have any history that the mother who was addicted to heroin caused any of the severe physical abuse that [Child] suffered. I think the probably -- and I don't know if either counsel didn't mention this on purpose -- but the one positive thing, the only positive thing, is that I think the Defendant and his wife took in the child; correct?
>
> MR. FALK: He did.
>
> THE COURT: And they did take in the child when the mother was incapable of caring for the child. To me that's the only positive thing, but it's like I hate to put it in these terms. It's like going from the frying pan into the fire, and that's exactly what happened here.
>
> The Defendant assaulted a defenseless 14-month-old child. I really can't get beyond that, and I know maybe what I'm going to say is not politically correct, but say it anyway. There's some people who just should not have custody of children. I don't know if that is politically incorrect or not. Just not everybody should

- 6 -

have custody, should have the right to have custody of a child; and Mr. Schlabig falls within that category.

When I'm reading about the injuries to [Child], injuries consistent with abuse of head trauma, which was an indication she had been violently shaken with or without impact, she had bleeding on her brain. Her brain had shifted. She had bruises on her face, legs and torso. She was also found to be malnourished, underweight, and she had head lice, severe diaper rash with blisters.

So for 14 months it sounded like to me that [Child] had lived in hell. Now, I don't hear that the mother, not the natural mother, but Mr. Schlabig's wife -- I shouldn't say mother; Mr. Schlabig's wife --was responsible for any abuse here. The abuse suffered by [Child] was two-fold. One, the physical abuse is what brings Mr. Schlabig in, and then the poverty of care which is what Mr. Schlabig and, I guess, his wife were also responsible for.

So in looking at this and looking at what's happened to the child while in Mr. Schlabig's care, as Ms. Flores was appalled, I am equally appalled that anyone would do something like this to a child.

I find it difficult to fathom. I just don't understand how on the one hand you did a good thing, which is taking the child in, and then on the other hand you physically abused the child. I just don't understand how you did that. You have other children, and there's no allegations of physical abuse to the other children, they just seem, I guess, if could use the term -- and I don't think it's appropriate to be light about anything about this case -- but the other children it almost sounds like the [P]eanuts character Pig Pen. They're all dirty and all in that type of condition. That's the only thing I would say about them. They're not victims, and I'm not considering them as victims.

So looking at the facts and circumstances here, this is not only an attack on a defenseless child, this is significant and substantial abuse to this child. And only for who knows why, Ms. Flores was there to hopefully save this child and save the child for the future. So any lesser sentence from my perspective would depreciate the seriousness of this. This is a deviation from the standard range of the guidelines [and] from the aggravated range of the guidelines.

> Mr. Schlabig, I know you have difficulties. I know Mr. Holihan has asked that you be kept in a county prison. For me, in light of the abuse here, I just can't do that.

N.T. Sentencing, 8/29/17, at 28-32.

As the foregoing makes clear, prior to imposing sentence, the trial court considered the PSI and the sentencing guidelines, and acknowledged its deviation from the aggravated range of the guidelines. The court also considered Schlabig's mental health history, his lack of prior record, and his other "difficulties." However, the court was also cognizant not only of the severity of the assault on the victim, but of the neglectful conditions in which she was kept by Schlabig and his wife prior to the incident.[5] Clearly, the court believed that Schlabig had not only violated a duty of care to the victim, but that his behavior was a particularly egregious violation of that duty.

In sum, we conclude that the trial court gave adequate consideration to mitigating circumstances when sentencing Schlabig. The court acted within its discretion in imposing the statutory maximum sentence in light of the nature and circumstances of Schlabig's offense. Accordingly, he is entitled to no relief.

_____

[5] At the time of her admission to the hospital after the incident, [Child] was so severely malnourished that she had "refeeding syndrome." Trial Court Opinion, 1/8/18, at 3. Refeeding syndrome is a serious and potentially fatal condition caused by sudden shifts in the electrolytes that help the body metabolize food when food is re-introduced after malnourishment or starvation. https://www.healthline.com/health/refeeding-syndrome (visited 6/19/18). [Child's] records disclosed that she weighed more at four months old (prior to being placed in Schlabig's care) than she did at fourteen months old, at the time of the incident. Trial Court Opinion, 1/8/18, at 2-3.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/24/18