J-S43013-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CARMELO RIVERA, JR. | : | |
| | : | |
| Appellant | : | No. 823 MDA 2023 |

Appeal from the Judgment of Sentence Entered September 9, 2021
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0002192-2020

BEFORE:   McLAUGHLIN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:               **FILED: MARCH 8, 2024**

Carmelo Rivera, Jr. appeals from the judgment of sentence imposed on his convictions for robbery and related charges. Rivera challenges the sufficiency and weight of the evidence and raises a discretionary sentencing claim. We affirm.

The court summarized the facts presented at the jury trial as follows.

> On September 23, 2019, at approximately 2am [sic], Angel Torres, along with his girlfriend, Reyni Meliton, left the Rancho Merengue club located on Franklin Street, near the intersection with Orange Street, in the city of Reading, Berks County, PA and began the walk to his car. An armed masked man, in long pants and a hoodie, ran up to him, directed him not to move and [to] be quiet. At that time, the man removed Mr. Torres' designer cross-body handbag, containing his wallet with $700 in cash inside and designer sunglasses. The man also removed the watch from his wrist. The assailant returned Mr. Torres' wallet with his identification and keys.

---

[*] Retired Senior Judge assigned to the Superior Court.

As the robbery was occurring, a black Infiniti pulled up next to them. The driver was not wearing a mask (and was later identified as Jason Myers). He exited the car. Henry Jiminez was also walking down Franklin Street at the time. He testified that he turned and suddenly was confronted by a masked man with a gun. While he struggled to push the gun away, he was struck on his head with something hard. Mr. Torres was watching the assault of Mr. Jiminez and described Mr. Jiminez as being pistol-whipped. After Mr. Jiminez fell to the ground because of the blow to the head, he was kicked by the assailant and the driver of the car. The two men rummaged in his pockets, taking approximately $400 in cash, [a] phone, [a] watch and [a] belt and then ran away on Orange Street. As a result of the attack, Mr. Jiminez suffered a fractured skull, a concussion, a broken finger, and needed a blood transfusion.

Police were dispatched and found the black Infiniti which was still running. The black Infiniti was approximately a half block from the club. In the cup holder was a live shell casing and a white hat with a cell phone underneath it on the front passenger seat. A person who was standing in front of the Infiniti told police, upon arrival, that the men ran down Orange Street and that one of them was wearing a red sweatshirt. Officer Morrison proceeded down Orange Street and saw two people mid-way down the block, one of whom was wearing a red sweatshirt. As he pursued, he heard two-to-three-gun shots coming from the area of Orange and Chestnut Street. Surveillance video footage obtained from the Southwest Middle school showed the second suspect (previously the masked suspect) raising his hand followed by two light flashes, purported to be muzzle flashes. Two shell casings were obtained from the area where these two light flashes occurred. The shell casings found on the street were of the same type and caliber as those obtained from the black Infiniti. Surveillance video was obtained from 116 Orange Street which showed one of two running persons throw an object in the air and land on the ground. A mask was recovered in front of 114 Orange Street. In the 100 block of Orange Street, a ski mask was recovered. DNA was obtained from the mask showing that [Rivera] was main contributor to the DNA profile recovered from the mask. However, there were three contributors to the DNA profile.

Mr. Myers' probation officer identified Mr. Myers in a picture of two men (admitted as Commonwealth Exhibit 7). The photo was obtained on Facebook from [Rivera's] public Facebook page. He also established that Mr. Myers' known vehicle was a black Infiniti,

although he was not the registered owner. The probation officer then provided the license plate number of the vehicle. It was a match to the vehicle found on the night of the incident.

[Rivera's] parole agent identified [Rivera] as the second person in the photo admitted as Commonwealth Exhibit 7. [Rivera's] parole agent also provided a phone number associated with [Rivera], although she never used that number to call him. A SIM card was extracted from the cell phone found in the Infiniti and [it] matched the phone number provided by the parole agent. Police obtained two other pictures of [Rivera] with Mr. Myers . . . from [Rivera's] Facebook page [and they were] admitted as Commonwealth Exhibit 11 and 14. In Commonwealth Exhibit 11 he is wearing a hat that is the same brand, color, and style as the hat collected from the black Infiniti on the night of the incident. No identifiable DNA was able to be extracted from the white hat in the black Infiniti.

Trial Court Opinion, 7/7/23, at 3-5.

The jury convicted Rivera of two counts of robbery, two counts of conspiracy to commit robbery, and one count each of firearms not to be carried without a license, theft by unlawful taking, conspiracy to commit theft by unlawful taking, receiving stolen property, conspiracy to commit receiving stolen property, terroristic threats, and simple assault.[1] Rivera was found not guilty of aggravated assault, simple assault, and assault with a deadly weapon as to the physical assault of Jiminez.

The court imposed an aggregate sentence of 21 to 42 years' incarceration followed by 20 years' probation on the two counts of robbery,

_____

[1] **See** 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 903(a)(1) (of 3701(a)(1)(ii)), 6106(a)(1), 3921(a), 903(a)(1) (of 3921(a)), 3925(a), 903(a)(1) (of 3925(a)), 2706(a)(1), and 2701(a)(1), respectively.

two counts of conspiracy to commit robbery, and firearms not to be carried without a license.[2] It considered the other convictions to have merged.

Rivera filed a post-sentence motion. The court granted the post-sentence motion in part. It vacated the judgment of sentence for firearms not to be carried without a license and imposed a new sentence on that count, reducing the aggregate sentence to 20.5 to 41 years' incarceration followed by 20 years' probation.[3] It denied the post-sentence motion in all other respects. Rivera appealed.[4, 5]

Rivera raises the following issues:

A. Whether the evidence at trial was insufficient to establish beyond a reasonable doubt the elements of firearms not to be carried without a license, when there was no testimony concerning

---

[2] On the robbery convictions, the court imposed sentences of eight to 16 years' incarceration and six to 12 years' incarceration. On the conspiracy counts, the court imposed sentences of three to six years' incarceration and 20 years' probation. On the firearms charge, the court imposed a sentence of four to eight years' incarceration. It ran each sentence consecutively.

[3] The court reduced the sentence on the firearms charge to three and a half to seven years' incarceration.

[4] Rivera did not file a notice of appeal within 30 days of the new judgement of sentence. However, the court reinstated his direct appeal rights on May 9, 2023, as relief granted on a Post Conviction Relief Act petition.

[5] The notice of appeal erroneously states the appeal is from the order granting in part and denying in part the post-sentence motions. The appeal properly lies from this order, not because it disposed of post-sentence motions, but because it amended Rivera's judgment of sentence. *See **Commonwealth v. Garzone***, 993 A.2d 1245, 1254 n.6 (Pa.Super. 2010); ***Commonwealth v. Shamberger***, 788 A.2d 408, 410 n.2 (Pa.Super. 2001) (*en banc*).

concealment of the firearm on [Rivera's] person or that the firearm was inside a vehicle and therefore requiring licensure?

B. Whether the Trial Court erred in failing to grant a new trial because the convictions on all counts were contrary to the weight of the evidence where there was no witness who provided direct identification of [Rivera] as the perpetrator and the circumstantial evidence was insufficient because the perpetrator was masked for the entirety of the event, the car involved was registered to another person, the mask had the DNA of two other unidentified individuals, and another hat in the vehicle had so many individuals' DNA on it that it could not be separated for comparison?

C. Whether under all the circumstances of the within case, the within sentence imposed is manifestly excessive so as to inflict too severe a punishment on [Rivera]?

Rivera's Br. at 8-9 (unpaginated)

Rivera first challenges the sufficiency of the evidence supporting the conviction for firearms not to be carried without a license. He argues the Commonwealth did not establish that he ever "had the gun concealed on his person or that he had the gun in the [b]lack Infinit[i]." *Id.* at 28 (unpaginated). He points out that both Torres and Jiminez testified that the masked assailant – allegedly Rivera – approached them on the street, armed with a handgun. They testified that after the robberies, the assailants ran away. He stresses that neither victim ever testified that the masked assailant had been seen without a gun or inside the car.

We review this issue pursuant to the following standard.

When reviewing a challenge to the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element

- 5 -

of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail. This standard applies equally where the Commonwealth's evidence is circumstantial.

In conducting this analysis, we do not weigh the evidence and substitute our judgment for that of the fact-finder. Additionally, the Commonwealth's evidence need not preclude every possibility of innocence in order to prove guilt beyond a reasonable doubt. The fact-finder is free to believe all, part, or none of the evidence.

*Commonwealth v. Clemens*, 242 A.3d 659, 664-65 (Pa.Super. 2020) (cleaned up).

A person commits firearms not to be carried without a license when that person "carries a firearm in any vehicle or . . . concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter[.]" 18 Pa.C.S.A. § 6106(a)(1).

Here, the Commonwealth presented sufficient circumstantial evidence that Rivera had transported the firearm in a vehicle. The evidence was that Myers pulled up in his car seconds after the first robbery began. After Myers and the masked assailant fled on foot, police found inside the vehicle a baseball hat matching one that Rivera had worn in a Facebook picture he took with Myers. They also found a cell phone bearing the phone number that Rivera used to communicate with his parole agent, as well as a live bullet that was the same caliber and brand – a .40 caliber Smith & Wesson bullet[6] – as the shell casings discarded when the previously-masked assailant fired the handgun. Nearby, the police found a ski mask that had primarily Rivera's DNA on it. Viewing this evidence in the light most favorable to the Commonwealth,

_____

[6] *See* N.T., 8/30/22, at 119-20, 121-22, 125, 126.

it was sufficient to allow the jury to conclude that Rivera rode with Myers in Myers' vehicle to the crime scene and had the handgun with him in the car at the time.

Rivera next challenges the weight of the evidence supporting all the convictions. He maintains that the trial court abused its discretion in determining that the jury's finding that he was involved was not against the weight of the evidence. He points out that while the mask found by the police had his DNA on it, it also had the DNA of two other people. Rivera further alleges the hat found in the vehicle was of a popular style and had so many individuals' DNA on it that they could not be separated for comparison. He asserts there was also no indication of the age of the photo of him wearing a similar hat. Rivera claims there was testimony establishing that the phone found in the car was registered to someone else, and his parole officer had only ever used that number to send text messages to Rivera, not to call him directly.

This issue calls for our review of the trial court's discretion:

> When reviewing a challenge to the weight of the evidence, we review the trial court's exercise of discretion. A reversal of a verdict is not necessary unless it is so contrary to the evidence as to shock one's sense of justice. The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses. The fact-finder also has the responsibility of resolving contradictory testimony and questions of credibility. We give great deference to the trial court's decision regarding a weight of the evidence claim because it had the opportunity to hear and see the evidence presented.

*Commonwealth v. Roane*, 204 A.3d 998, 1001 (Pa.Super. 2019) (cleaned up).

The trial court rejected the weight claim, finding "[t]he Commonwealth proved that [Rivera] was the masked assailant by circumstantial evidence." Trial Ct. Op. at 8. It noted that "the jury was free to accept or reject the various arguments put forth by the defense in this case." *Id.* It concluded, "After reviewing the record, the verdict, while disappointing to [Rivera], is certainly not shocking." *Id.*

On the present record, we cannot say that the trial court abused its discretion in finding the verdict did not shock the conscience.

In his final issue, Rivera contends his aggregate sentence is manifestly excessive. Rivera asserts that the court "deviated from the sentencing guidelines [by] imposing sentences above the guidelines on two counts, a top of the standard range sentence on one count and an illegal sentence beyond the statutory maximum on one count (later corrected)." Rivera's Br. at 17 (unpaginated).[7] He highlights that the court ran all sentences consecutively, for a total sentence of 20½ to 41 years' incarceration followed by 20 years' probation. He also argues that in imposing the sentence, the trial court failed to adequately consider his age and the fact that Myers pleaded guilty and received a much shorter sentence of 10 to 20 years' incarceration, even though Myers, and not Rivera, physically assaulted Jiminez, whereas Rivera

---

[7] Rivera does not explain which sentences he claims were above the guidelines.

did not injure either victim. Rivera contends the court imposed a relatively lengthier sentence for his crimes as punishment for having asserted his right to a trial.

Before we review a challenge to the court's exercise of discretion in imposing sentence, "we must assess whether [the appellant] has raised a substantial question that the court violated a provision of the Sentencing Code or that the sentence is contrary to the norms underlying the sentencing process." *Commonwealth v. Goodco Mech., Inc.*, 291 A.3d 378, 405 (Pa.Super. 2023).[8] "The key to resolving the preliminary substantial question inquiry is whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case." *Commonwealth v. Dove*, 301 A.3d 427, 437 (Pa.Super. 2023) (internal quotation marks and citation omitted). Rivera has stated a substantial question. *See Commonwealth v. Dodge*, 77 A.3d 1263, 1271-72 (Pa.Super. 2013) (concluding the appellant's claim that the imposition of consecutive sentences was disproportionate to his crimes, and that the court disregarded the nature and circumstances of his offense, presents a substantial question); *Commonwealth v. Perry*, 883 A.2d 599, 602 (Pa.Super. 2005) (finding an excessive-sentence claim, in

---

[8] Rivera has satisfied the other requirements for raising a discretionary sentencing claim. *See Goodco Mech., Inc.* at 405 n.21 (noting requirements of the timely filing of the appeal, proper preservation of the sentencing issue, and inclusion of a Pa.R.A.P. 2119(f) statement in the appellate brief).

conjunction with an assertion that the court did not consider mitigating factors, raises a substantial question).

On the merits, we find no abuse of discretion. A court has broad discretion over sentencing because it is "in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." *Goodco Mech., Inc.*, 291 A.3d at 405 (citation omitted). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Id.* (citation omitted).

Pursuant to Section 9721 of the Sentencing Code, the court must follow the general principle that the sentence "should call for confinement that is consistent with section 9725 (relating to total confinement) and the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). The court may impose a sentence of total confinement "if, having regard to the nature and circumstances of the crime and the history, character, and condition of the defendant," it finds confinement necessary because (1) there is an undue risk that the defendant will commit another crime if subject to lesser restrictions, (2) a correction institution can provide needed treatment, or (3) "a lesser sentence will depreciate the seriousness of the crime of the defendant." *Id.* at § 9725. Where a court has been informed by a pre-sentence investigation report

- 10 -

("PSI"), we presume that it was aware of all information relevant to assessing the defendant's character and any mitigating circumstances. ***Goodco Mech., Inc.***, 291 A.3d at 407.

The court must also consider the ranges suggested by the sentencing guidelines. ***Id.*** at § 9721(b). When the court imposes a sentence falling within the ranges suggested by the sentencing guidelines, we will only vacate if "the case involves circumstances where the application of the guidelines would be clearly unreasonable." ***Id.*** at § 9781(c)(2). When the court deviates from the guidelines ranges, we will vacate where "the sentence is unreasonable." ***Id.*** at § 9781(c)(3).

Here, the court stated at sentencing that it was going to use the Sentencing Guidelines ranges applicable to a defendant who possessed a deadly weapon while committing the offense, and Rivera did not object. ***See*** N.T. 9/1/21 at 4, 7. Nor did Rivera object when the Commonwealth recited the guidelines ranges calculated with the deadly weapon possessed enhancement ("DWE"). ***Id.*** at 4-6.

Given the application of the DWE, contrary to Rivera's assertions, the court did not impose "sentences above the guidelines on two counts, a top of the standard range sentence on one count and an illegal sentence beyond the statutory maximum on one count (later corrected)."[9] Rather, the court imposed sentences within the guidelines on all but one count, for which it

---

[9] We preliminarily note that Rivera received sentences on five counts, and this recitation only includes four.

imposed a period of probation.[10] We must therefore leave the sentence undisturbed unless the circumstances of the case made application of the guidelines clearly unreasonable or the imposition of probation was unreasonable.

_____

[10] On count 1 (robbery), the standard range with the DWE was 57-69 months' minimum incarceration, plus or minus 12 months for the mitigated and aggravated ranges. *See* N.T., 9/1/21, at 5. The court imposed a sentence of 72 months' minimum incarceration, which was an aggravated range sentence.

On count 2 (conspiracy to commit robbery), the standard range with the DWE was 45-57 months' minimum incarceration, plus or minus 12 months for the mitigated and aggravated ranges. *See id.* The court imposed a sentence of 36 months' minimum incarceration, which was a mitigated range sentence.

On count 13 (robbery), the standard range with the DWE was 81-99 months' minimum incarceration, plus or minus 12 months for the mitigated and aggravated ranges. *See id.* at 4-5. The court imposed a sentence of 96 months' minimum incarceration, which was a standard range sentence.

On count 14 (conspiracy to commit robbery), the standard range with the DWE was 69-87 months' minimum incarceration, plus or minus 12 months for the mitigated and aggravated ranges. *See id.* at 5-6. The court imposed a sentence of 20 years' probation. This sentence constituted an upward departure from the guidelines, and the statutory maximum. *See* 18 Pa.C.S.A. § 1103(1) (stating maximum sentence for a first-degree felony is 20 years).

Finally, on count 5 (firearms not to be carried without a sentence), the DWE did not apply. *See* N.T., 9/1/21, at 5. The standard range was 36-48 month's minimum incarceration. *See id.* at 4, 6 (Rivera's prior record score is 4), 5 (stating standard range); *see also* 204 Pa. Code § 303.15 (providing offense gravity score of 9); 204 Pa. Code § 303.16(a) (basic sentencing matrix). However, the statutory maximum for the offense was 42 to 84 months' incarceration. *See* 18 Pa.C.S.A. §§ 6106(a)(1) (grading violation as third-degree felony), 1103(3) (providing maximum sentence for third-degree felony is seven years). While the initial sentence was 48 months' minimum incarceration, which was a standard-range sentence, that sentence exceeded the statutory maximum. Rivera's corrected sentence was 42 months, which, while it was the statutory maximum, also fell within the standard range.

We do not find such circumstances existed. The court stated that it reviewed the PSI, the recommendations of counsel, and the ranges suggested by the sentencing guidelines. *Id.* at 13-14. It noted that while Myers received a lesser sentence because the Commonwealth offered him a plea deal, it stated it does not penalize defendants for exercising their right to a trial. *Id.* at 12. It noted Rivera had four prior robbery convictions and had committed the instant offenses after serving 10 years and a short period of parole. *Id.* at 13. The court stated,

> And the scenario that's presented by the facts of this case is that the defendant and Mr. Myers were, in effect, roaming the area waiting for people to get out of the Rancho Merengue, which is well known as a place where at closing time, the streets are – there are a lot of people in the streets – and apparently robbing people at gunpoint. This is extraordinarily dangerous conduct.

*Id.* at 13. The court noted Rivera was 31 at the time of sentencing and had "not been rehabilitated in the slightest way" by his first 10-year sentence, "so his rehabilitative needs are huge." *Id.* at 14.

The record reveals that the court adequately considered all relevant sentencing factors and that its imposition of guidelines sentences and an above-guidelines sentence of probation, while consecutively imposed, was not unreasonable or an abuse of discretion.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary


Date: 3/8/2024