**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MARKESE MARTIN | : | |
| | : | |
| Appellant | : | No. 1761 EDA 2018 |

Appeal from the Judgment of Sentence January 29, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007160-2015,
CP-51-CR-0009778-2015, CP-51-CR-0009779-2015

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MARKESE MARTIN | : | |
| | : | |
| Appellant | : | No. 1921 EDA 2019 |

Appeal from the Judgment of Sentence Entered January 29, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007160-2015,
CP-51-CR-0009778-2015, CP-51-CR-0009779-2015

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MARKESE MARTIN | : | |
| | : | |
| Appellant | : | No. 1922 EDA 2019 |

Appeal from the Judgment of Sentence Entered January 29, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007160-2015,

J-S32045-20

CP-51-CR-0009778-2015, CP-51-CR-0009779-2015

BEFORE:    KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED FEBRUARY 17, 2021**

Markese Martin appeals from the judgment of sentence imposing two consecutive life sentences, *inter alia*, following a bench trial where the court found him guilty of first and second degree murder and related crimes.  On appeal, Martin claims that the verdict was against the weight of the evidence and that the trial court abused its discretion in sentencing him to two consecutive life sentences instead of making them concurrent.  Upon review, we affirm in part, vacate in part, and remand for further proceedings.

On February 24, 2015, Martin was arrested and charged with numerous offenses, which stemmed from a robbery and a series of shootings that occurred on the afternoon of September 23, 2014, and the early hours of the next day.  The trial court detailed the circumstances surrounding these charges in its opinion.  Summarily, Megan Jones and her boyfriend, Randall Falon, set up a drug deal for percocets with Ronald McMillan.  Once the deal was in progress, Falon's friends, Martin, Kord Rozier, and Antonio Holcum, aka Bunk, were to rob McMillian.

As planned, Jones went to meet McMillian, with Falon's cohorts following behind, unbeknownst to McMillian.  Jones met with McMillian and his cohorts, Christopher Ross and Kenneth Woods.  During the deal, Martin approached,

_____

[*] Retired Senior Judge assigned to the Superior Court.

- 2 -

pulled out a gun, and ordered that the drugs be turned over. A fight ensued between Rozier and Woods, but stopped when shots were fired. McMillian and Ross fled the scene. Martin then came over to Rozier and Woods, and shot Woods in the chest. Martin and the remaining conspirators fled the scene with the pills. Rozier asked Martin why he shot him; Martin said "I had to."

Shortly after the shooting, McMillian and Ross were stopped by police. They told the police about the drug deal and shooting. McMillian identified Martin as the shooter from a photographic lineup.

Later that day, Martin told his girlfriend, Charde Denmark, about the robbery, and that he shot someone, but did not know if he killed him. Denmark saw on the news that Woods died, and told Martin.

After the shooting, Rozier met up with his girlfriend, Jasmine Williams, who was eight months pregnant, and told her what happened. Realizing that he dropped his hat at the scene, Rozier became concerned that the police would identify him from the hat and connect him to the robbery. Consequently, Rozier concocted a plan to turn himself in, but lie about what happened. Rozier told the others about his plan, but they protested.

Nevertheless, Rozier called Williams' uncle, Joseph Mears, who was a Philadelphia Police sergeant, and planned to meet him at the homicide unit. Before going however, Rozier called Martin and told him he was turning himself in. Martin objected, and suggested that they meet.

Around midnight on September 24, Rozier and Williams left to see Mears, but first they met up with Martin. Martin got in the back seat of their

car, and pulled out a gun. Rozier and Martin started fighting over the gun, and several shots were fired, one hitting Rozier in the arm. Rozier told Williams to run. Rozier also tried to run, but Martin shot him multiple times. Rozier fell to the ground and played dead. Martin then chased Williams, and shot her in the head.

After the police arrived, Rozier and Williams were taken to the hospital. Williams and her baby were pronounced dead later that night. Rozier survived, but sustained serious bodily injuries. Rozier identified Martin as the shooter of Woods and Williams.

Following these incidents, Martin fled to Atlanta with the help of Denmark. Almost six months later, Martin was arrested and charged with numerous offenses.

At his bench trial,[1] Rozier, Jones, Denmark, and Sergeant Mears, among others, testified. The trial court found Martin guilty of first degree murder, second degree murder, attempted murder, conspiracy-second degree murder, robbery-infliction of serious bodily injury, two counts of intimidation of witnesses/victims refrain from reporting/informing, three counts of possession of instrument of crime, and various firearm offenses.[2] On January 29, 2018,

_____

[1]In exchange for having a bench trial, the Commonwealth agreed not to pursue the death penalty on the first degree murder charge.

[2] 18 Pa.C.S.A. §§ 2502(a), 2502(b), 901(a), 903(a), 3701(a)(1)(i), 4952(a)(1), 907(a), 6106(a)(1) and 6108.

the court sentenced Martin to consecutive life terms of imprisonment for the first and second degree murder convictions, and concurrent terms of incarceration, of varying lengths, for his other convictions.[3]  Martin filed a post-sentence motion, which was denied by operation of law.

Martin filed this timely appeal.  The trial court and Martin complied with Pennsylvania Rule of Appellate Procedure 1925.

This Court *sua sponte* consolidated Martin's appeals.  Additionally, it was noted that Martin's notice of appeal listed three trial court docket numbers. This Court issued an order directing Martin to show cause why his appeals should not be quashed in light of **Commonwealth v. Walker**, 185 A.3d 969, 977 (Pa. 2018).  Martin responded, stating that he filed a separate notice of appeal at each docket number.  This Court subsequently discharged the rule and referred the issue to the merits panel.

On appeal, Martin raises three issues for our consideration, which we have reordered for ease of disposition:

> 1. Should these consolidated appeals be quashed for failure to comply with **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018)?
>
> 2. Did not the trial court err in denying appellant's motion for a new trial, as the verdict was against the weight of the evidence

---

[3] The trial court originally gave Martin a concurrent life sentence for his conspiracy conviction.  However, during the course of this appeal, the trial court realized that this was an illegal sentence under 18 Pa.C.S.A. § 1102(c), and therefore has suggested that this court remand the case after resolution of the other issues to resentence Martin for this conviction.  Trial Court Opinion, 5/2/19, at 1.  As we agree that this portion of his sentence was illegal, we remand solely for resentencing on this count.

where the evidence of record was inherently unreliable and did not establish that appellant was the shooter in either incident, such that the conclusion of appellant's guilt was based purely on speculation and conjecture, in violation of appellant's constitutional rights under the state and federal constitutions?

3. Did not the trial court err as a matter of law, abuse its discretion and violate general sentencing principles by imposing a manifestly excessive and unreasonable sentence of consecutive life sentences of incarceration, where appellant was 25 years old at the time of the offenses and suffered from a catastrophic youth riddled with life-threatening medical ailments and overwhelming abuse and neglect, and was not the sentence in excess of what was necessary to address the gravity of the offense, the protection of the community and appellant's rehabilitative needs?

Martin's Brief at 4.

Before addressing Martin's substantive issues, we must first determine whether this appeal is properly before us. *Walker* requires that "when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed. The failure to do so will result in quashal of the appeal." *Walker*, 185 A.3d 969, 977 (citing Pa.R.A.P. 341). Recently, this Court, sitting *en banc*, clarified the intent of this directive and held that where separate notices of appeal are filed at each docket, even though they contain multiple docket numbers, the inclusion of multiple docket numbers on each notice of appeal does not invalidate the notice of appeal. *See Commonwealth v. Johnson*, 236 A.3d 1141, 1148 (Pa. Super. 2020) (*en banc*). Rather, *Walker* only requires that a defendant file a separate notice of appeal for each lower court docket being challenged. *Id.*

Here, initially, this Court received only one notice of appeal from the lower court, including all three docket numbers challenged by Martin. It was

subsequently discovered that Martin had filed separate notices with all three dockets listed at the other two dockets, but the clerk had not forwarded them to this Court.

We conclude that Martin satisfied *Walker*. Martin filed a separate notice at each lower court docket which he intended to challenge. This is evidenced by the separate docket entries and different time clock stamps on each notice. That each of Martin's notices listed more than one docket number is of no consequence per *Johnson*. Consequently, we need not quash this appeal, and may consider Martin's other issues.

In his second issue, Martin argues that the verdict was against the weight of the evidence. According to Martin, the testimony and evidence did not establish that Martin, although present at the crime scenes, had a gun or that he was the shooter in either incident; instead Martin claims that Holcum was the shooter. Martin's Brief at 27, 29. In support of his claims, Martin first argues that the Commonwealth witnesses' testimony was unreliable and incredible. They all had some sort of relationship with Holcum, and therefore had motive to lie and protect him. *Id.* Additionally, they participated in the crimes and had a self-serving interest in testifying. *Id.* at 27. Second, the identification description given by the two eyewitnesses to the first shooting, did not match that of Martin. Third, a different gun was used during each incident. Finally, the video footage of the second shooting did not show the actual shooting; someone else could have done it. *Id.* at 29. Martin therefore

claims the trial Court erred in finding that the verdict was not against weight of evidence and in denying his motion for a new trial.[4] *Id.*

When reviewing a challenge to the weight of the evidence, our standard of review is as follows:

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. ***Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.***
>
> * * *
>
> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> * * *
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. ***Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.***

*Commonwealth v. Clay*, 64 A.3d 1049, 1054–55 (Pa. 2013) (citations omitted) (emphasis added). Absent an abuse of discretion, the trial court's decision will not be disturbed. *See Commonwealth v. Griffin*, 515 A.2d

---

[4] We note that Martin's third and fourth arguments do not relate to the weight of the evidence, but rather the sufficiency of the evidence. Martin did not challenge the sufficiency of the evidence on appeal, and therefore we do not address these arguments.

865, 869 (Pa. 1986). An abuse of discretion "is not merely an error in judgment. Rather, it involves bias, partiality, prejudice, ill-will, manifest unreasonableness or a misapplication of the law." ***Commonwealth v. West***, 937 A.2d 516, 521 (Pa. Super. 2007). By contrast, a proper exercise of discretion "conforms to the law and is based on the facts of record." ***Id.***

Initially, we observe that, typically, a weight claim is filed after a jury trial in the hope that the trial court judge who, like the jury, had an opportunity to hear the evidence and observe the demeanor of the witnesses, "will conclude that the verdict was so contrary to what it heard and observed that it will deem the jury's verdict such a miscarriage of justice and trigger the court's time-honored and inherent power to take corrective action." ***Criswell v. King***, 834 A.2d 505, 512 (Pa. 2003). Here, however, a non-jury trial was held. Although weight of the evidence claims have been addressed in non-jury cases, there is a logical inconsistency in asking a trial judge to conclude that his non-jury decision shocked his own conscience. Notwithstanding this, we consider whether the trial court's decision was against the weight of the evidence.

Not surprisingly, the trial court concluded that its non-jury verdict was not against the weight of the evidence. In reaching its decision, the trial court thoroughly reviewed the evidence presented to support Martin's convictions.

Critical to this decision was determination of the witnesses' credibility. In reaching its conclusion, the trial court thoughtfully considered the credibility of the witnesses, and explained its rationale for finding the Commonwealth's

witnesses credible. The court found that the testimony was substantially consistent among them; their individual testimony also was substantially consistent with their statements to police. Notably, the testimony of the witnesses whom Martin did not challenge corroborated the testimony of those whom he did. Furthermore, the court explained why, despite the witness' initial untruthfulness or withholding of information, criminal record, motive or interest in lessening his or her own sentence, the court nonetheless found these witnesses' testimony credible. Based on its review, the court concluded that these witnesses, especially Rozier, credibly testified that Martin was the shooter in both incidents. "[T]he finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Roberts*, 133 A.3d 759, 767 (Pa. Super. 2016) (citing *Commonwealth v. Brooks*, 7 A.3d 852, 856–57 (Pa. Super. 2010). The trial court summarized its analysis as follows:

> Rozier, McMillan, and Jones all identified [Martin] as the shooter of Kenneth Woods. [Martin] admitted as much to Denmark, who also testified that [Martin] left her house around the time of the second shooting. She also testified about [Martin's] subsequent flight to Atlanta. Sergeant Mears' testimony corroborated Rozier's account of the aftermath of the robbery-shooting and his plan to turn himself in under false pretenses. Rozier identified [Martin] as the one who shot him and Williams in the second shooting and also identified [Martin] as being in his car [at] the gas station . . . He further testified as to his call with Martin letting him know of the plan to turn himself in.

Trial Court Opinion, 5/2/19, at 29. The trial court therefore found that Martin shot both Woods and Williams.

Based upon our review of the record, and the trial court's rationale for denying Martin's motion, we conclude that the trial court did not abuse its discretion in finding that its verdict was not against the weight of the evidence.

Lastly, Martin challenges the discretionary aspects of his sentence for his first and second degree murder convictions. This Court has explained that, to reach the merits of a discretionary sentencing issue, we must conduct a four-part analysis to determine:

> (1) whether the appeal is timely; (2) whether [a]ppellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [in accordance with 2119(f)]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. . . . [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Commonwealth v. Colon*, 102 A.3d 1033, 1042–43 (Pa. Super. 2014) (quoting *Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa. Super. 2013)).

Here, Martin satisfied the first three requirements under *Colon*. Accordingly, we must determine whether Martin has raised a substantial question for our review. An appellant raises a "substantial question" when he "sets forth a plausible argument that the sentence violates a provision of the [S]entencing [C]ode or is contrary to the fundamental norms of the sentencing

- 11 -

process." ***Commonwealth v. Crump***, 995 A.2d 1280, 1282 (Pa. Super. 2010) (citation omitted).

In his Pa.R.A.P. 2119(f), Martin acknowledges that the trial court was required to impose life sentences for his murder convictions, but argues that it abused its discretion by imposing those life sentences consecutively instead of concurrently. Specifically, in rendering this sentence, Martin claims that the trial court failed to consider his catastrophic and debilitating background and his rehabilitative needs in light of those circumstances. Consequently, Martin claims his sentence was manifestly excessive and unreasonable and should be vacated. Martin's Brief at 23-24.

Regarding the imposition of consecutive sentences and whether a substantial question has been raised, this Court has held:

> A court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question. ***Commonwealth v. Mastromarino***, 2 A.3d 581, 587 (Pa. Super. 2010)[.] Rather, the imposition of consecutive rather than concurrent sentences will present a substantial question in only "the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." ***Commonwealth v. Lamonda***, 52 A.3d 365, 372 (Pa. Super. 2012)[(en banc)].
>
> [An appellant] may raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question.

*Commonwealth v. Swope*, 123 A.3d 333, 338-39 (Pa. Super. 2015) (quotations and citations omitted).

Furthermore, "ordinarily, a claim that the sentencing court failed to consider or accord proper weight to a specific sentencing factor *does not* raise a substantial question." *Id.* (emphasis in original). However, this Court has held that "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question." *Commonwealth v. Caldwell*, 117 A.3d 763, 769-70 (Pa. Super. 2015) (*en banc*).

In *Caldwell*, we noted that "prior decisions from this Court involving whether a substantial question has been raised by claims that the sentencing court 'failed to consider' or 'failed to adequately consider' sentencing factors [have] been less than a model of clarity and consistency." *Id.* at 769-70 (quoting *Commonwealth v. Seagraves*, 103 A.3d 839, 842 (Pa. Super. 2014)). We explained further that, although the lack of consideration of rehabilitative needs has often not triggered our review, "an excessive sentence claim – in conjunction with an assertion that the court failed to consider mitigating factors – raises a substantial question." *Id*. at 769-770 (quoting *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) and *Commonwealth v. Perry*, 883 A.2d 599, 602 (Pa. Super. 2005)).

Consequently, when we view Martin's challenge to the imposition of consecutive sentences as unduly excessive, together with his claim that the court failed to consider certain mitigating factors or his rehabilitative needs,

we conclude that he presents a substantial question. Therefore, we will consider the merits of his sentencing claim.

Our standard of review of a sentencing claim is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006).

In reviewing Martin's excessive sentencing claim, we first note that the trial court had the benefit of a pre-sentence report. "[W]here the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." *Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009) (citation omitted).

Additionally, the trial court had a mitigation report. The trial court specifically noted on the record that it reviewed this report after the trial, and reread it the day before sentencing. At the sentencing hearing, Martin's counsel highlighted for the trial court some of the pertinent factors from the report, particularly noting that Martin suffered from a serious medical condition, was terribly neglected, and was emotionally and physically abused, essentially from conception. Counsel further emphasized Martin's actual age,

25, at the time of his crimes and suggested that, given the medical, societal, cultural, and environmental circumstances of his life, his mental age was lower than his actual age, despite Martin's refusal to undergo a mental health evaluation.

From our review of the sentencing transcript, it is evident that, contrary to Martin's claim, the trial court sincerely considered the contents of the reports and the circumstances of Martin's life in fashioning its sentence. The court stated:

> Having read everything I read regarding your life and the circumstances that led you to this, I think to the extent that people failed you in your life, I don't think anybody can deny that. And I think the people on this side—and I'm indicating the . . . the family of the baby and Ms. Williams and Mr. Woods—I think they regret it the most, right? They wish that you had been taken care of and loved and provided for, at a minimum, and then we wouldn't be here. . . . I'm struggling with how to fashion a sentence that takes into account those things, yet acknowledges the lives of three people who were taken from this from this earth, especially that baby and her mother, who really—these people . . . had no dog in the fight . . . . All over something that happened where you look at these facts and it's like, it didn't have to happen in the first instance.

N.T., 1/29/18, at 27-28.

It is also evident that the trial court considered Martin's rehabilitative needs. The court specifically acknowledged that one of the goals of sentencing is rehabilitation. *Id.* at 30. Martin's counsel addressed his potential for rehabilitation. The mitigation report was extensive, signifying the need for rehabilitation. Indeed, the court noted that Martin could work to rehabilitate himself and be a positive member of his community if he so chose and did the

things that counsel argued he could. N.T., 1/29/18, at 33. Nonetheless, the court found that the circumstances of this case weighed in favor of retribution, another purpose of sentencing, and, thus, warranted consecutive life sentences. *Id.* On appeal, "[w]e cannot re-weigh the sentencing factors and impose our judgment in place of the sentencing court." *Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa. Super. 2009).

We have long held that a sentencing court has broad discretion regarding whether a defendant serves sentences consecutively or concurrently. *Commonwealth v. Zirkle*, 107 A.3d 127, 133 (Pa. Super. 2014). Here, the trial court viewed the murders as separate incidents thereby warranting separate life sentences. N.T., 1/29/18, at 31. Martin is not entitled to a volume discount for his crimes. *See Commonwealth v. Hoag*, 665 A.2d 1212, 1214 (Pa. Super. 1995). Moreover, the court specifically noted that it did not sentence Martin based on the death of Williams' unborn child since that case had been *nolle prossed*. However, the fact that Williams was pregnant at the time that Martin shot her in the head as she ran away remained a fact of the case, and the court could not simply ignore it when determining Martin's sentence. N.T., 1/29/18, at 29. Notably, the court imposed concurrent sentences on his other charges, attempting to balance all the circumstances of this case. *Id.* at 31-32.

Based upon our review of this case and the sentencing transcript, we conclude that, contrary to Martin's allegations, it is evident that the trial court considered *all* of the sentencing factors, including the mitigating

circumstances of Martin's life and his rehabilitative needs. The court thoroughly and thoughtfully deliberated on the sentence to impose against Martin for his first and second degree murder convictions. We do not find that the trial court committed a manifest abuse of discretion in rendering Martin's sentence.

Judgment of sentence affirmed in all respects, except as to conspiracy to commit murder, which is vacated. Case is remanded for resentencing on the conspiracy conviction. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date:* *2/17/2021*